**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Lee JAMERSON,**
**Defendant-Appellant.**

**No. 76–1121.**

United States Court of Appeals,
Ninth Circuit.

Jan. 19, 1977.

Rehearing Denied April 1, 1977.

Alphus R. Christensen, Spokane, Wash., for defendant-appellant.

Dean C. Smith, U. S. Atty., Spokane, Wash., for plaintiff-appellee.

Before ELY and CHOY, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge:

Robert Lee Jamerson appeals from his conviction, after a jury trial, on a charge of knowing transportation of a stolen vehicle in interstate commerce in violation of the Dyer Act, 18 U.S.C. § 2312. The appeal

* Honorable William H. Orrick, United States District Judge, Northern District of California, sitting by designation.

raises two major issues: first, whether it was error for the trial court to refuse to instruct the jury to disregard the prosecution's reference in closing argument to certain hearsay evidence introduced during the trial and, second, whether the court improperly denied a motion to suppress physical evidence discovered during the course of an allegedly improper search. We reject both appellant's contention concerning the impropriety of referring to the hearsay testimony in closing argument and his contention that the admission into evidence of the material uncovered during a warrantless entry of the stolen vehicle violated the appellant's Fourth Amendment rights. Accordingly, for the reasons hereinafter stated, we AFFIRM.

## I.

In the early morning hours of September 17, 1975, appellant was observed by a Washington State Wildlife Agent sleeping in a van parked near Highway 21 in Ferry County, Washington. A check of the vehicle's license plate number, conducted by the agent and by the deputies of the Ferry County Sheriff's Department who were summoned to the scene, revealed that the number belonged to a vehicle which had been reported stolen. On the basis of this information, obtained from the National Crime Information Center, the appellant was awakened and arrested on a charge of possession of a stolen vehicle. Immediately thereafter, at the scene of the arrest, the arresting officers performed an inventory of the contents of the vehicle. The purpose of the inventory was to make a record of the vehicle's contents in order to protect the police department in the event of a claim regarding lost or stolen items.[1]

Some hours later, in the afternoon of the same day, the sheriff's department received a call from the van's owner requesting its release. After consultation with an agent of the Federal Bureau of Investigation, which had assumed responsibility for the case, it was agreed that the van would be released to its owner after removal of all the property within the van. A deputy then entered the vehicle to remove the inventoried contents. At that time he noticed a piece of newspaper sticking out from under a mat behind the driver's seat. He removed the mat and discovered, wrapped up in the paper, two stolen Canadian license plates and several pieces of Canadian identification. The license plates and the identification were subsequently introduced into evidence against appellant over his objection that these items had been seized illegally in violation of his Fourth Amendment rights.

At trial, during cross-examination of one of the arresting officers, defense counsel asked the officer if he had made any effort to locate persons other than the defendant who might have had a connection with the stolen vehicle. This line of questioning was pursued on the defense theory that someone other than the defendant had actually driven the van but had abandoned the vehicle and hitchhiked away. This questioning

1. At trial the arresting officers expressly denied that they searched the van for evidence at the time of the arrest of appellant. Rather, they conducted an "inventory" of its contents. As explained by Deputy Sheriff Patrick:

"A We didn't search the vehicle.

\* \* \* \* \* \*

A We inventoried the contents of the vehicle, but to that extent alone, just what was, appeared to be valuable, and what was there, and what wasn't." RT at 204.

The purpose of the inventory was explained as follows:

"A Well, any contents, you know, of the vehicle, of any value that would, assume it would be stolen or lost, in our custody, we inventory at that time, so we know what we have, so if he makes an allegation that there was more there, we know if there was or there wasn't." RT at 171.

Given the justification for the first inspection of the contents of the vehicle and for the later entry into the car, at which time the disputed evidence was discovered, the government does not urge, and we do not decide, whether a warrantless search of the vehicle for evidence of the suspected crime after the car had been impounded would have been valid. See *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

elicited hearsay testimony from the officer to the effect that the defendant had been seen alone in the van on the evening in question by border guards at the Canadian border and had been refused entry into Canada.[2] No objection was made to this hearsay testimony at the time.

On redirect examination of the same witness, the government referred to the attempted border crossing and sought to question the witness further about the incident. Defense counsel objected on the grounds that the evidence was inadmissible hearsay and the objection was sustained.[3] During closing argument the prosecution again made reference to the appellant's alleged attempt to cross the border.[4] At the close of the prosecution's argument, defense counsel objected to the mention of the border crossing incident and moved to strike it from the record. The motion was denied.

## II.

We first consider appellant's contention that prejudicial error occurred when the government was permitted to refer to the border crossing incident in closing argument since his hearsay testimony was not properly in the record. We find no error in this regard.

No objection was made to the arresting officer's hearsay statements about the defendant's attempted border crossing at the time this testimony was elicited. When appellant's counsel did object during the government's redirect of the same witness, it was apparently to block any further exploration of this subject by the prosecuting attorney. Appellant made no mention to strike the testimony already in the record.

 It is a fundamental rule of evidence that an objection not timely made is

---

**2.** On cross-examination of Deputy Sheriff Robin Gail Patrick, the following colloquy took place:

"Q (By Mr. Christensen) Now, Mr. Patrick, did you, after incarcerating Mr. Jamerson, make any efforts to locate other people who might have had some connection with this vehicle?
A Yes, I did.
Q What effort did you make?
A Contacted the Canadian port, I contacted the Canadian authorities, talked to the F.B.I., I talked to anybody that would be interested in the case.
Q That's it?
A That's all the information I had.
Q Did you attempt to find out whether any people had been seen, strangers had been seen, hitchhiking in the area at that time?
A No, my answer was settled at the port of entry.
Q Well, I'm talking about right in your bailiwick there.
A Well, secondhand, but I contacted the port of entry and the defendant presented himself for admission into Canada, was rejected earlier that evening, he was by himself at the time." RT 211–212.

**3.** The prosecution sought to question the witness about this border crossing evidence, and defense counsel objected:

"Q Now, you indicated, in response to counsel's questions as to what you had done to follow up, as follow-up investigation in this case, you talked to a number of people, and specifically people up at the port, that you found out from the people up there that the defendant had tried to

get through earlier that evening, but had been rejected, is that right?
A Yes.
Q Was there any information given to you by those persons, also, that in conformity with—
MR. CHRISTENSEN: Your Honor, I object to this. Counsel is trying to get information about some, what somebody else told this man—He can call the witness if there is some witness that can identify the man up in Canada.
 * * * * * *
THE COURT: Objection as to hearsay is sustained." RT 223–224.

**4.** During the prosecution's closing argument, the following statement was made to the jury:

"It's also been brought out by the defense in this case, on cross-examination of one of the officers, that the defendant apparently had arrived up at the border crossing about 10:00 p. m. when the border was closing, and at that time was observed to be alone there by the border crossing people, and rejected, because he had lack of funds to justify his being in Canada for as long as he had apparently said." RT 291–292.

There was no direct evidence in the record of the reason appellant had been turned away at the Canadian border. The prosecuting attorney had apparently inferred lack of funds as the reason from the fact that appellant only had $30 on his person when he was apprehended.

waived. Fed.R.Evid. 103(a)(1); 1 J. Wigmore, *Evidence* § 18 (3d ed. 1940). If testimony, even though improper, is introduced into evidence without objection, it becomes part of the record and is available to be considered for its probative value by the trier of fact. *United States v. Carney,* 468 F.2d 354, 357 (8th Cir. 1972). No objection having been made to the evidence when given and no motion to strike having been made, it was properly before the jury. *See Anthony v. United States,* 256 F.2d 50, 53–54 (9th Cir. 1958); *Desimone v. United States,* 227 F.2d 864 (9th Cir. 1955). Therefore, it was not error for the prosecutor to refer to this incident in his closing argument. Nor do the prosecutor's incidental references to insignificant matters not in the record require reversal. *Cf. United States v. Bell,* 165 U.S.App.D.C. 146, 506 F.2d 207, 225–226 (1974).

### III.

We now turn to the question of whether it was prejudicial error for the trial court to deny appellant's motion to suppress the Canadian license plates and identification found in the van after the vehicle was impounded. As noted earlier, the discovery of these items occurred when an officer entered the vehicle to remove the inventoried contents, not during the course of a search for evidence of the crime charged.

### A.

At the outset, we must consider whether the appellant has standing to object to the seizure and introduction of this evidence. The government urges that appellant is not "[a] person aggrieved by an unlawful search" within the meaning of Rule 41(e) of the Federal Rules of Criminal Procedure, and thus may not object to use of these items at trial.[5] We disagree.

In order to qualify as a "person aggrieved" who has standing to raise Fourth Amendment claims:

"* * * one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960).

To establish standing, a movant must generally claim that he was on the premises at the time of the contested search, that he has a possessory or proprietary interest in the premises, or that he owned or possessed the seized property. *See Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Simmons v. United States,* 390 U.S. 377, 392, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Moreover, the Supreme Court has enunciated a rule of "automatic" standing in situations where the movant is charged with an offense that includes as an essential element the possession of the seized evidence at the time of the contested search. *Jones v. United States, supra,* 362 U.S. at 263–264, 80 S.Ct. 725; *see also Brown v. United States, supra.*

In *Jones,* the defendant was convicted of violations of the narcotics laws which could be established through proof solely of possession of narcotics. Narcotics were introduced at trial which had been found during a search of an apartment defendant had been occupying with the permission of a friend. The Supreme Court rendered alternative holdings to the effect that Jones had standing to contest the validity of the search of the apartment.

First, the Court adopted the automatic rule that, where possession both convicts and confers standing, the movant need not

---

**5.** Rule 41(e) of the Federal Rules of Criminal Procedure provides in pertinent part:

"A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized * * *. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12."

make a preliminary showing of an interest in the premises searched or the property seized. This rule was prompted in part by the unfairness of prosecutorial self-contradiction. The Court refused to condone the vice of allowing the government to allege possession as part of the crime charged, and yet deny that there was possession for standing purposes. The rule also relieved a defendant of the predicament of coerced self-incrimination since he would no longer have to admit to possession of the contraband in order to contest the validity of its seizure.[6] *Jones v. United States, supra,* 362 U.S. at 262–264, 80 S.Ct. 725.

Second, the Court in *Jones* held that the defendant's presence at the apartment at the time of the search conferred upon him a sufficient proprietary interest to establish standing.

The issue of whether a defendant charged with a violation of the Dyer Act may claim the benefit of the automatic standing rule has not been decided by this Circuit. However, appellant cites authorities from other circuits which we find persuasive. *Simpson v. United States,* 346 F.2d 291 (10th Cir. 1965); *Glisson v. United States,* 406 F.2d 423 (5th Cir. 1969).

In *Simpson,* defendant was in possession of a stolen vehicle. When initially questioned about the car, he insisted that it was his. After his arrest, the car was impounded and searched for identification. The appellate court first ruled that Simpson had a sufficient possessory interest in the vehicle at the time it was searched to confer standing even though the car in fact did not belong to him. On a petition for rehearing *en banc,* the full court denied the petition with an opinion that added the *Jones* automatic standing rule to its rationale for finding standing. The court stated:

"* * * In the case at bar Simpson was in possession of a stolen car. Possession was the basis of the prosecution in Jones and possession is the basis for the conviction in the instant case * * *.

* * * * * *

As we interpret Jones, the very nature of this prosecution accorded to Simpson the standing to invoke Rule 41(e) as a person aggrieved." *Simpson v. United States, supra,* 346 F.2d at 295.

In *Glisson,* appellant was convicted under the Dyer Act for the interstate transportation of a stolen truck. While defendant was in jail for an unrelated offense, the police became suspicious that the truck might be stolen. They searched the truck once where it was parked and a second time at police headquarters. In holding that both searches were invalid, the court found that the defendant had standing under Rule 41(e). As in the case at bar, in *Glisson* there was no direct evidence of actual transportation of the vehicle across state lines so the government relied on possession of the truck to establish the charge. The court reasoned that the *Jones* standing rule should apply because "[t]o rule otherwise puts the defendant to an unconscionable choice and would allow the government the benefit of contradictory positions." *Glisson v. United States, supra,* 406 F.2d at 427.

Also pertinent is this Circuit's decision in *Cotton v. United States,* 371 F.2d 385 (9th Cir. 1967). In that case, appellant was also charged with a Dyer Act violation. When arrested initially, the accused asserted that the car was his. He later contested the validity of two searches which established that the car was stolen. The court discussed the alternative holdings in *Jones* and adopted the approach that the appellant had standing because he had a sufficient possessory interest in the vehicle at the

---

**6.** In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Court held that a defendant's testimony in support of a motion to suppress could not be used against him at trial to establish guilt unless he made no objection. Thus, the danger of coerced self-incrimination has been removed by *Simmons.* Whether the "vice of prosecutorial self-contra-diction warrants the continued survival" of the automatic standing rule in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), has not been decided by the Supreme Court. *Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973).

time of the search. The court reached this conclusion notwithstanding the fact that at the time of the second search the defendant was in jail and the agent who examined the car thought it was stolen. Although finding standing on possessory grounds, the court expressly declined to decide whether a prosecution under the Dyer Act conferred automatic standing because of the element of possession implicit in the charge. *Cotton v. United States, supra,* 371 F.2d at 391.

The government contends that these cases are distinguishable on the ground that in all of them the search took place before the police actually ascertained that the vehicle was stolen. In the present case, on the other hand, the entry into the vehicle occurred after the rightful owner had claimed the vehicle. Hence, the government argues that although the appellant might have had a possessory interest in the vehicle at the time he was arrested, he no longer had any such interest at the time the disputed items were discovered during the subsequent entry into the car.

The government's position is supported by *United States v. Kucinich,* 404 F.2d 262 (6th Cir. 1968), and *Rodgers v. United States,* 362 F.2d 358 (8th Cir. 1966). In these cases the court found no standing in situations where the defendant was already under arrest and, thus, was not in possession of the vehicle at the time of the search, and where the police knew that the vehicle was stolen at the time the evidence was seized. However, we decline to follow these authorities in the case at bar.

In the instant case, the defendant was found sleeping in the vehicle. This indicia of possession formed the basis of the government's case. *Simpson* and *Glisson* make clear that it is this allegation of possession in the charge of a Dyer Act violation that confers the requisite standing to challenge the validity of a seizure of evidence from the vehicle. The fortuity that the particular items here at issue were discovered at a time after the rightful owner had been notified rather than at the time of the initial inventory is not controlling. As the Supreme Court noted in *Jones:*

"* * * The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e)." *Jones v. United States, supra,* 362 U.S. at 263–264, 80 S.Ct. at 732.

█ Accordingly, we hold that a person accused of a Dyer Act violation as the defendant was here has automatic standing to contest the validity of a search or seizure of a vehicle or its contents where possession of the vehicle forms a basis of the charge.

### B.

Having determined the appellant has standing to contest the search in question, the next issue is whether the warrantless entry into the vehicle and the discovery of the items seized violate the Fourth Amendment proscription against unreasonable searches and seizures.

█ It should be noted parenthetically that there is no general "automobile exception" to the requirement in the Fourth Amendment of obtaining a warrant. *South Dakota v. Opperman,* 428 U.S. 364, 382, 96 S.Ct. 3092, 3102, 49 L.Ed.2d 1000 (1976) (Powell, J., concurring). The Supreme Court in *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), and in *Cardwell v. Lewis,* 417 U.S. 583, 589, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), has drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment. However, as Justice Stewart said in *Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971):

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away * * *."

Indeed, as the Court observed in *Cooper v. California,* 386 U.S. 58, 61, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967):

"* * * '[L]awful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it,' * * *."

*See also United States v. Lawson,* 487 F.2d 468 (8th Cir. 1973).

■ Thus, we start with the proposition that warrantless searches are *per se* unreasonable except for a few well-delineated exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). These exceptions as listed in *United States v. Mapp,* 476 F.2d 67, 76 (2d Cir. 1973) include (1) hot pursuit, (2) plain view doctrine, (3) emergency situations, (4) automobile search, (5) consent, and (6) incident to arrest. Unless a warrantless search or seizure meets one of these exceptions, the evidence thereby obtained is inadmissible at trial. *United States v. McCormick,* 502 F.2d 281 (9th Cir. 1974).

Here, the government does not contend that the Canadian license plates and identification were seized pursuant to a warrantless search for evidence of criminal activity based upon probable cause. Rather, the government relies on cases sustaining warrantless police intrusions into automobiles in lawful police custody where the process is aimed at securing or protecting the car or its contents. *Cooper v. California, supra; Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Cady v. Dombrowski, supra.*

In *Cooper,* the police impounded the car of a suspected heroin dealer pursuant to a state law requiring the forfeiture of a vehicle used for the unlawful sale or transportation of narcotics. The Court upheld a warrantless inventory search of the car, including an examination of the glove compartment, even though the car was being held in connection with criminal activity for which an arrest had been made and the search was not conducted until a week after the car was impounded. The Court found that such a search was reasonable, and;

therefore, not violative of the Fourth Amendment, despite the fact that no warrant had issued and probable cause to search had not been established.

The decision in *Cooper* was premised upon the theory that the police had a possessory interest in the car based on the state forfeiture statute requiring them to retain it some four months until the forfeiture sale. *South Dakota v. Opperman, supra,* at 377, 96 S.Ct. at 3101, n.2 (Powell, J., concurring); *see* Note, Warrantless Searches and Seizures of Automobiles, 87 Harv.L.Rev. 835, 846 (1974). In such circumstances, the Court in *Cooper* noted that:

"It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." 386 U.S. at 61–62, 87 S.Ct. at 791.

In *Harris,* the petitioner's car was impounded after he was arrested on a robbery charge. The Court upheld the introduction of evidence seized by an officer who, after entering the car to conduct an inventory search and to secure its doors and windows against the rain, observed a car registration card lying on the metal stripping of the car. However, the Court explicitly stated that "the admissibility of evidence found as a result of a search under police regulation is not presented by this case". *Harris v. United States, supra,* 390 U.S. at 236, 88 S.Ct. at 993. Rather, the seizure was validated because the discovery of the card was not the result of a search of the car, but of measures taken to protect the car while it was in police custody.

*Cady v. Dombrowski, supra,* involved a warrantless search in the interest of public safety and pursuant to what the Court has described as "community caretaking functions". 413 U.S. at 441, 93 S.Ct. 2523. In that case, the police arrested an off-duty policeman for drunken driving after a late-night accident. A search of the car, after it was towed to a private garage, was conducted pursuant to standard police procedure to discover the police service revolver which the arresting officers thought the

driver was required to carry. The search was not carried out for the purpose of discovering criminal evidence. However, in the process, police uncovered blood-stained items in the trunk of the car which led to Dombrowski's conviction for murder. The Court held that the warrantless intrusion was justified by the "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." 413 U.S. at 447, 93 S.Ct. at 2531.

Relying on *Cooper, Harris,* and *Dombrowski,* the Court in *South Dakota v. Opperman, supra,* in an opinion rendered after this case was submitted, squarely held that a routine inventory search of a lawfully impounded vehicle does not violate the Fourth Amendment. In that case, the police impounded an automobile illegally parked in a restricted zone in Vermillion, South Dakota. At the impound lot a police officer observed a watch on the dashboard and other items located on the back seat and the back floorboard of the vehicle. The officer then ordered the car door unlocked and proceeded, pursuant to standard police procedures, to inventory the contents of the car, including the contents of the glove compartment which was unlocked. A plastic bag containing marijuana was found in the glove compartment. Later on, when Opperman, the owner of the vehicle, was arrested on charges of possession of marijuana, he moved to suppress the evidence yielded by the inventory search. The motion to suppress was denied, and his subsequent conviction upheld by the Supreme Court of South Dakota. Chief Justice Burger, writing the opinion for the majority of five, pointed out three noninvestigatory justifications which made an intrusion into an automobile reasonable: (1) safeguarding an owner's property, (2) shielding the police against claims over lost or stolen property, and (3) the protection of police from potential danger. At 369, 96 S.Ct. at 3096.

In the case at bar, after the contents of the vehicle had been inventoried the vehicle was driven to the sheriff's de-partment. The owner requested the vehicle be released. A deputy sheriff entered the vehicle to remove the already-inventoried contents when he noticed a piece of newspaper protruding from under a mat behind the driver's seat. Upon removing the mat, he discovered the stolen Canadian license plates and several pieces of identification. wrapped in the paper. This search was plainly a routine inventory search made prior to releasing the vehicle to its proper owner and clearly is validated by *Opperman.* The question in *Opperman,* as here, is whether or not the search was reasonable under the Fourth Amendment. In the *Opperman* case, as here, the police were "indisputably engaged in a caretaking search of a lawfully impounded automobile". *South Dakota v. Opperman, supra,* at 375, 96 S.Ct. at 3099. There is no suggestion in *Opperman* or here that "the standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive". At 376, 96 S.Ct. at 3100. Thus, we validate the search, and the district court is AFFIRMED.