**UNITED STATES of America, Appellee,**

v.

**Kenneth Paul JOHNSON, Appellant.**

**No. 77–1931.**

United States Court of Appeals,
Ninth Circuit.

March 15, 1978.

Tom O'Toole, Phoenix, Ariz., for appellant.

John G. Hawkins, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before WRIGHT and HUG, Circuit Judges, and INGRAM, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

A jury found appellant guilty of conspiring to import heroin and conspiring to possess it with intent to distribute. He argues on appeal that the trial judge erred in admitting in evidence a quantity of heroin and an altered automobile gasoline tank, both of which were seized in warrantless searches. We affirm.

FACTS:

On December 15, 1975, agents of the Drug Enforcement Administration (DEA) arrested appellant and a co-conspirator, Bowen, as they sat in a 1975 Cadillac in a parking lot in Arizona. Bowen had been driving the Cadillac and Johnson had been driving a 1969 Chevrolet, parked nearby.

After the two were arrested, DEA agents searched both cars and found approximately five kilograms of heroin in a tennis bag and suitcase in the Cadillac's trunk. Appellant's driver's license was in a pair of trousers in the suitcase. An initial inventory search of the Chevrolet produced no drugs.

The vehicles were seized for forfeiture, 21 U.S.C. § 881 and 49 U.S.C. §§ 781 and 782,[1]

---

* Of the Northern District of California.

1. 21 U.S.C. § 881. Forfeitures.
  (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
    (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.
    *   *   *   *   *   *
    (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1)  .  .  . .

  (b) Any property subject to forfeiture  .  . under this subchapter may be seized by the Attorney General upon process issued  .  . by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—
    (1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant.
  49 U.S.C. § 781. Unlawful use of vessels, vehicles, and aircraft; contraband article defined.
    (a) It shall be unlawful (1) to transport, carry, or convey any contraband article in,

and removed to a government facility for safekeeping.

Bowen and Johnson were convicted of possession of heroin with intent to distribute and this court upheld the legality of their arrests and the initial searches and seizures. *United States v. Bowen and Johnson,* Nos. 76–2369 & 76–2484, unpub. memorandum (9th Cir. Feb. 8, 1977), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2680, 53 L.Ed.2d 274 (1977).

In the two weeks following the vehicle seizures, DEA agents received numerous inquiries about the Chevrolet from Johnson and his attorney. At a hearing on December 29, 1975, DEA Agent Murphy was asked repeatedly whether drugs had been found in the Chevrolet. Being curious that so much interest was displayed in that vehicle, Murphy ordered the DEA's evidence technician, Walquist, to make a second, more exhaustive search of it.

On December 29 and 30, Walquist performed a search, without a warrant, to see if contraband had been hidden in the vehicle.[2] The search was exceptionally thorough[3] and resulted in the discovery of an altered gasoline tank containing a package with five more kilograms of heroin.

After photographing the car, the tank, and the heroin, the agents replaced the drugs with dummy packages filled with a non-narcotic substance. They replaced the fuel tank and, with a magistrate's approval, affixed an electronic tracking device to the underside of the vehicle.

Rather than proceeding with a forfeiture action, the government released the car to Johnson on January 13, 1976, and agents followed him and the radio beacon as he drove from Arizona to Los Angeles. They lost contact in heavy traffic, but eventually located the Chevrolet in a locked, "tenants only" garage beneath an apartment house. The agents could see the front of the parked car from the street through the garage gate.

A lock on the gate to which only building tenants had keys, limited access to the garage from outside the building. There also was access to the garage from the building lobby through an unlocked door, but the entry door from the street to the lobby was equipped with locks. Television surveillance equipment monitored the lobby.

Without a warrant,[4] one agent found the door to the lobby unlocked and walked

---

upon, or by means of any vessel, vehicle, or aircraft; (2) to conceal or possess any contraband article in or upon any vessel, vehicle, or aircraft; or (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.

§ 782. Seizure and forfeiture.

Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited . . . .

2. There is no contention that this was anything but an investigatory search. The vehicle had been inventoried after seizure and no contraband had been found. Had the evidence in question been uncovered during the noninvestigatory inventory, there would be little doubt of its admissibility. *See South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000.

3. Walquist testified that on December 29 he received instructions to "thoroughly go through the vehicle again to see if there may be

some narcotics in it." He began at the front and checked "everything [he] could think that could possibly hold narcotics in the front of the vehicle."

He then searched the interior, removed the rocker panels, and checked beneath the floor and behind the seats. He combed the engine compartment as well and finally noticed traces of oil on the straps and bolts holding the fuel tank. Because these are normally dry and rusty, he determined to return the following day with additional tools and remove the fuel tank.

Walquist informed his superiors, then returned and removed the tank.

4. Shortly after their arrival in Los Angeles, the agents informed an Assistant United States Attorney that they would apply for a warrant to search the residence into which Johnson was expected to take the dummy packets. At the time, they were not sure where that would be. Government counsel told them that she would not apply for such a warrant because she believed that such a search would be tainted by the earlier search of the impounded Chevrolet, which she considered illegal.

through to the garage. Other agents waited until a tenant activated the garage gate and then followed his car inside. The agents found the altered fuel tank against a wall behind the car. The dummy drug packets were gone.

At trial, the government introduced ten kilograms of heroin, the photographs of the car and its contents, and the altered fuel tank. Johnson's motions to suppress the evidence obtained in the course of the warrantless searches of December 29 and 30, and January 13 were denied.

## THE DECEMBER 29 SEARCH:

The parties recognize that, since the seizure for forfeiture was legal,[5] we must look for guidance to the Supreme Court's decision in *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

In *Cooper* the Court considered a search of a car impounded under state forfeiture statutes analogous to the federal statutes in this case. *Cooper* held admissible the evidence seized from an automobile glove compartment during a warrantless search one week after the defendant's arrest and the car's seizure.

The rationale of *Cooper* is unclear.[6] The search was not incident to arrest, nor was it undertaken in light of exigencies giving rise to the traditional "automobile exception" to the Fourth Amendment's general search warrant requirement.[7] It is debatable whether the *Cooper* search was validated because it was a noninvestigatory inventory or because agents of the government, with lawful possession of the vehicle pending forfeiture, had the right to search it at will.

*Compare Chambers v. Maroney,* 399 U.S. 42, 49 n.7, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), *with South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). *See also Cady v. Dombrowski,* 413 U.S. 433, 452–53, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (Brennan, J., dissenting).

The language in *Cooper* leaves room for disagreement. Cognizant of the fact that "lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it," 386 U.S. at 61, 87 S.Ct. at 791, the Court explained that

[h]ere the officers seized the petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car—whether the State had "legal title" to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." *United States v. Rabi-*

---

5. The warrantless seizure of the Chevrolet was lawful because it was undertaken in the face of exigent circumstances. That issue was litigated in Johnson's previous appeal. Generally, warrantless seizures of vehicles are proper in certain, well-defined circumstances. *See United States v. McCormick,* 502 F.2d 281, 285 (9th Cir. 1974), *applying Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). *See also* 49 U.S.C. § 782, *quoted at n.1, supra.*

6. To quote Mr. Justice Rehnquist: "[T]he decisions of [the Supreme Court] dealing with the constitutionality of warrantless searches, espe-

cially when those searches are of vehicles, suggest that this branch of the law is something less than a seamless web." *Cady v. Dombrowski,* 413 U.S. 433, 440, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973).

7. *See United States v. Connolly,* 479 F.2d 930, 935 (9th Cir.), *cert. denied,* 414 U.S. 897, 94 S.Ct. 248, 38 L.Ed.2d 139 (1973). *See generally Chambers v. Maroney,* 399 U.S. 42, 51–52, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

*nowitz,* 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 [1950].

386 U.S. at 61–62, 87 S.Ct. at 791.

Appellant contends that *Cooper* approved a noninvestigatory inventory search aimed at protecting police during the period in which a seized vehicle must be held, and that it is untenable in light of subsequent Supreme Court opinions to argue that *Cooper* created a general exception to the search warrant requirement for vehicles seized for forfeiture. His position is supported by language in *Cooper* stating that it would be unreasonable to deny police the right to search the vehicle "even for their own protection," and it is reinforced by the Supreme Court's own subsequent characterization of *Cooper* as an inventory search case.

In *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), the Court approved a warrantless search of a car removed from a highway accident scene and parked at a private garage. The Court reasoned that, because the driver's pistol may have remained within the vehicle and because the driver was himself unable to secure the car, the police search was justified. "[T]he safety of the general public . . . might be endangered if an intruder removed a revolver from the trunk of the vehicle." 413 U.S. at 447, 93 S.Ct. at 2531. In relying on *Cooper,* the *Cady* majority described it as a case involving an inventory search conducted "to guarantee the safety of the [vehicle's] custodians." 413 U.S. at 447, 93 S.Ct. at 2531.[8]

Similarly, in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Supreme Court approved an inventory search of a locked car, impounded for overtime parking, in which valuable items of personalty were visible. In the course of the inventory, officers. discovered drugs in the glove compartment. The Court upheld their admission because it considered police inventory searches reasonable when conducted pursuant to standard procedures in furtherance of "community caretaking functions." 428 U.S. at 368, 96 S.Ct. 3092.

The *Opperman* opinion supported its holding with three reasons: protection of the owner's property while in police custody, protection of police from disputes over lost or stolen property, and protection of police from potential danger. 428 U.S. at 369, 96 S.Ct. 3092. Describing *Cooper* as "the first" inventory search case,[9] it understood that search to have been based on notions of police safety.

The court in *Opperman* thought automobiles distinguishable from places given more substantial Fourth Amendment protection because of the considerable noncriminal contact police have with automobiles, because automobiles are subject to extensive regulation, and because one's expectation of privacy as to his automobile is generally not high. 428 U.S. at 367–68, 96 S.Ct. 3092. However, the Court did note that, while local police often inventory cars as part of their everyday caretaking functions, "[t]he contact with vehicles by federal law enforcement officers, usually, if not always, involves the detection or investigation of crimes unrelated to the operation of a vehicle." 428 U.S. at 369 n.4, 96 S.Ct. at 3097.[10]

---

**8.** See Note, Warrantless Searches and Seizures of Automobiles, 87 Harv.L.R. 835, 847 (1974) (criticizing the "police protection" justification for inventory searches). The "police protection" rationale has been criticized because seized vehicles are seldom dangerous instrumentalities and because it might logically be extended to encompass searches far more intrusive than garden variety inventories.

**9.** In *Cooper v. California, supra,* the Court upheld the inventory of a car impounded under the authority of a state forfeiture statute. Even though the inventory was conducted in a distinctly criminal setting and carried out a

week after the car had been impounded, the Court nonetheless found that the car search, including examination of the glove compartment where contraband was found, was reasonable under the circumstances.

*South Dakota v. Opperman, supra,* 428 U.S. at 373, 96 S.Ct. at 3098 (footnote omitted).

**10.** The *Opperman* Court explained that the constitutional search warrant requirement is linked to the need to establish probable cause before a search, which is unrelated to the reasons for police inventories. 428 U.S. at 370 n.5, 96 S.Ct. 3092. Justice Powell, concurring with the majority, emphasized that, in the con-

Hence, the Supreme Court's post-*Cooper* decisions do support appellant's characterization of *Cooper's* holding as limited to inventory searches. Both the *Cady* and *Opperman* Courts emphasized that, on the facts before them, there was "no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive." *South Dakota v. Opperman*, 428 U.S. at 376, 96 S.Ct. at 3100, *citing Cady v. Dombrowski, supra.*[11]

Cases in this circuit also characterize *Cooper* as an inventory search case. *See, e. g., United States v. Jamerson*, 549 F.2d 1263 (9th Cir. 1977). *Jamerson* involved an inventory search of a stolen car prior to its release to the owner. While acknowledging that *Cooper* referred to the authorities' lawful possession of the car, the panel termed that search an inventory and emphasized the police safety rationale supporting it. 549 F.2d at 1270.

The *Jamerson* panel expressly reserved the question "whether a warrantless search of the vehicle for evidence of the suspected crime after the car had been impounded would have been valid." 549 F.2d at 1265 n.1 (*citing Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Cady v. Dombrowski, supra;* and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)). Because *Jamerson* was an inventory search case and because of the cases cited by the panel we are led to conclude that the court did not concern itself with the searches of cars seized for forfeiture, but was instead commenting only on inventory and exigent circumstances justifications for warrantless automobile searches.[12]

Nevertheless, panels in this circuit have adopted an expansive view of the *Cooper* holding when considering searches of cars seized for forfeiture. They have held that, once a vehicle is validly seized for forfeiture, a subsequent search of it is lawful. *See, e. g., United States v. Karp*, 508 F.2d 1122, 1124 (9th Cir. 1974), *cert. denied*, 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669

text of inventory searches, there is no danger of hindsight evaluations of reasonableness and that officers conducting inventories exercise little discretion. 428 U.S. at 383, 96 S.Ct. 3092.

Warrantless investigatory searches of vehicles seized for forfeiture stand on a different footing. Government agents use great discretion in deciding whether to seize a car and whether to search it, and how extensive the search should be. Consideration of the search's propriety in these cases will necessarily involve "hindsight evaluation."

11. The implication of this language may be that post-seizure investigatory searches can be made only pursuant to a warrant which lists the items sought and the places to be searched.

This interpretation is strengthened by *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The Court invalidated a warrantless search of a locked footlocker taken from an automobile trunk at the time of arrest and removed to a federal facility. The Court commented:

Once the federal agents had seized [the footlocker] at the railroad station and had safely transferred it to the Boston federal building under their exclusive control, there was not the slightest danger that the footlocker could have been removed before a valid search warrant could be obtained.[7]

[7] This may often not be the case when automobiles are seized. Absolutely secure storage facilities may not be available, *see South Dakota v. Opperman, supra; Cady v. Dombrowski, supra*, and the size and inherent mobility of a vehicle makes it susceptible to theft or intrusion by vandals.
433 U.S. at 13, 97 S.Ct. at 2484.

The reference to searches of seized vehicles cites two recent inventory search cases, emphasizing the reasons for permitting those searches. Neither the references nor the reasoning applies to investigatory searches of automobiles seized for forfeiture. Here, Johnson's car had been placed in a government facility at a military installation for safekeeping. The possibility that it would be disturbed by thieves or vandals was remote.

12. *Cady v. Dombrowski, supra*, was an inventory search case. *Cardwell v. Lewis, supra* and *Chambers v. Maroney, supra*, considered the time and location of warrantless automobile searches permitted by the "exigent circumstances" exception to the general search warrant requirement.

The *Jamerson* panel began its analysis, saying that there is "no general 'automobile exception' to the requirement in the Fourth Amendment of obtaining a warrant." 549 F.2d at 1269. It listed recognized exceptions to the warrant requirement which did not include one for automobiles seized for forfeiture. *See* 549 F.2d at 1270–71.

(1975) (dictum); *United States v. McCormick*, 502 F.2d 281, 284 (9th Cir. 1974) ("We do not doubt that if the seizure of the car . . . was valid, the later search . . was also valid."); *United States v. Arias*, 453 F.2d 641, 643 (9th Cir. 1972).[13]

This interpretation of *Cooper* rests on the premise that government agents, having obtained possession by a lawful seizure under forfeiture statutes, may search a vehicle at will. The interpretation springs from extraneous language in *Cooper* which seems to have approved the search because it was "closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained." 386 U.S. at 61, 87 S.Ct. at 791.[14]

This interpretation is well illustrated by *United States v. Arias, supra*. In *Arias* government agents lawfully seized a station wagon which they believed was used to facilitate the consummation of a crime involving contraband. After an initial search yielded nothing, the authorities subjected the vehicle to a "more thorough probe, pursuant to [forfeiture statutes] conducted at a federal facility." 453 F.2d at 642–43.

As in this case, the second search in *Arias* was intrusive, warrantless, and investigatory. Drugs were discovered in the car's rear quarter panel. With little discussion, the court approved the search after establishing that the vehicle had been properly seized for forfeiture under 49 U.S.C. §§ 781 and 782.[15]

In *United States v. McCormick, supra*, this court limited earlier Ninth Circuit cases which upheld warrantless vehicle *seizures* pursuant to forfeiture statutes.[16] It did

---

**13.** *See United States v. Shye*, 473 F.2d 1061, 1065–66 (6th Cir. 1973) (when car is searched after lawful seizure, "no protectible privacy interest of the car's owner or occupants has been invaded.") (Alternative holding.) *But see South Dakota v. Opperman*, 428 U.S. at 380, 96 S.Ct. 3092 (Powell J., concurring), quoted at n.14, *infra*.

**14.** Dicta in a few Supreme Court opinions indicate that some members of the Court may understand the justification for the search in *Cooper* to have been the possessory interest of the authorities, arising from the lawful seizure of the vehicle. *See, e. g., Chambers v. Maroney*, 399 U.S. 42, 49 n.7, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Justice Brennan wrote in his dissent in *Cady v. Dombrowski*, 413 U.S. at 452–53, 93 S.Ct. at 2533, that

[a]nother exception to the warrant requirement is that which sustains a search in connection with the seizure of an automobile for purposes of forfeiture proceedings. In *Cooper v. California*, 386 U.S. 58, [87 S.Ct. 788, 17 L.Ed.2d 730] (1967), the Court upheld the warrantless search of an automobile after it had been lawfully impounded pursuant to a California statute mandating the seizure and forfeiture of any vehicle used to facilitate the possession or transportation of narcotics. There, however, *the police were authorized to treat the car in their custody as if it were their own, and the search was sustainable as an integral part of their right of retention.* (Emphasis supplied.)

Justice Powell, concurring in *South Dakota v. Opperman*, 428 U.S. at 377 n.2, 96 S.Ct. 3092, made passing reference to the authorities' possessory interest as a justification for the search in *Cooper*, but he added that "the unrestrained search of an automobile and its contents would constitute a serious intrusion upon the privacy of the individual in many circumstances." 428 U.S. at 379–80, 96 S.Ct. at 3101. He said that "[u]pholding [inventory] searches . . . provides no general license for the police to examine all the contents of [impounded] automobiles." 428 U.S. at 380, 93 S.Ct. at 3102.

**15.** Although the *Arias* panel did not cite *Cooper*, it based its holding on two Ninth Circuit cases, one of which relied on *Cooper*. *Lockett v. United States*, 390 F.2d 168 (9th Cir.), cert. denied, 393 U.S. 877, 89 S.Ct. 175, 21 L.Ed.2d 149 (1968); *Burge v. United States*, 342 F.2d 408 (9th Cir.), cert. denied, 382 U.S. 829, 86 S.Ct. 63, 15 L.Ed.2d 72 (1965).

*Lockett* cited *Cooper* for the rule that once federal agents have seized a vehicle carrying contraband, a subsequent search of the vehicle is reasonable. *Burge* was decided before *Cooper*. Cf. *United States v. McCormick*, 502 F.2d 281 (9th Cir. 1974) (limiting *Lockett* and *Burge* ) and nn.16 & 17 *infra*.

**16.** *McCormick* reviewed the circumstances in which warrantless seizures of automobiles are proper. After acknowledging that many cases in this circuit and elsewhere had permitted warrantless seizures of vehicles suspected of transporting contraband under 49 U.S.C. § 782, *McCormick* held that the proposition could not withstand recent Supreme Court law. "To the extent that any of our cases can be read as holding that, in every case, a car can be seized under 49 U.S.C. § 782 without a warrant, so long as probable cause exists, they no longer state good law . . . ." 502 F.2d at 285.

not, however, tamper with the rule that a lawful seizure validates a post-seizure investigatory search.[17]

This circuit is not alone in its interpretation of the law governing searches of lawfully seized vehicles. *See, e. g., United States v. Panebianco,* 543 F.2d 447, 456 (2d Cir. 1976); *United States v. Zaicek,* 519 F.2d 412, 414 (2d Cir. 1975); *United States v. La Vecchia,* 513 F.2d 1210, 1215–16 (2d Cir. 1975); *United States v. Capra,* 501 F.2d 267, 280 (2d Cir. 1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975); *United States v. Shye,* 473 F.2d 1061, 1065–66 (6th Cir. 1973); *United States v. Edge,* 444 F.2d 1372, 1375 (7th Cir. 1971); *United States v. Stout,* 434 F.2d 1264, 1267 (10th Cir. 1970); *United States v. Ortega,* 471 F.2d 1350, 1360 (2d Cir. 1972), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973).

Although we apply it, we recognize the rule's shortcomings. In effect, it allows a vehicle search to proceed once a valid seizure, with or without a warrant, has been accomplished.

■ The standard of probable cause to support a seizure for forfeiture is less precise and rigorous than that required to obtain a search warrant in ordinary circumstances.

> If agents have probable cause to believe that a car is or has been used for carrying contraband, they may summarily seize it pursuant to the federal forfeiture statutes . . . .

*United States v. Capra,* 501 F.2d at 280. *See also United States v. Arias,* 453 F.2d at 643.

Indeed, a vehicle may be seized even in the absence of probable cause to believe it contains contraband if there is nonetheless probable cause to believe that it was used "to facilitate the transfer of contraband." *United States v. La Vecchia,* 513 F.2d at 1216.

■ In this case the circumstances of the seizure, coupled with appellant's post-seizure inquiries, would provide probable cause for the subsequent search, but there were no exigent circumstances justifying the search without a warrant. The car was in the custody of government agents with little danger of its being moved or tampered with during the time required to obtain a warrant. However, the propriety of the seizure of the Chevrolet has been established. Under our rule that a seizure for forfeiture makes subsequent searches reasonable, the search can be upheld.[18]

It is of no consequence that the government released the car to Johnson rather than proceeding with forfeiture for, when the vehicle was searched, it was in the custody of federal agents under the authority of forfeiture statutes. *Lockett v. United States,* 390 F.2d 168, 172 (9th Cir.), *cert. denied,* 393 U.S. 877, 89 S.Ct. 175, 21 L.Ed.2d 149 (1968), *limited on other grounds, United States v. McCormick,* 502 F.2d at 284. *See also United States v. La Vecchia,* 513 F.2d at 1216.

The Supreme Court's reasoning in *Cady v. Dombrowski, supra,* and *South Dakota v. Opperman, supra,* lends some support to the argument that the rule goes too far.[19] But, because the law on this point is unclear, we

---

*See also United States v. Karp,* 508 F.2d 1122, 1124 n.1 (9th Cir. 1974) (rejecting retroactive application of *McCormick*).

**17.** Both *McCormick* and *Karp* cited *Cooper* for the proposition that, if a car is validly seized, a subsequent search is also valid. *United States v. McCormick,* 502 F.2d at 284; *United States v. Karp,* 508 F.2d at 1124.

**18.** Because the search of the seized Chevrolet was legal, we need not consider whether admission of the heroin found on December 30 or the pictures of the car and its altered fuel tank might be harmless error. There was considera-

ble additional evidence of Johnson's guilt including the five kilograms of heroin found in the Cadillac in a suitcase which contained Johnson's driver's license in a pair of trousers.

**19.** Its consequences can be far-reaching. In *United States v. La Vecchia, supra,* the Second Circuit approved the warrantless search of a vehicle which agents thought had been used to facilitate the transfer of contraband. Even though the car was never actually seized, probable cause at the time of search made it subject to seizure, which the panel thought sufficient.

choose to follow Ninth Circuit precedent and that of several other circuits. The search of the Chevrolet on December 29 and 30, 1975 was proper.

THE JANUARY 13 GARAGE SEARCH:

█ Because the search of the seized Chevrolet was lawful, we need not consider the propriety of the apartment garage search. While that may have been improper, *see United States v. Hufford*, 539 F.2d 32, 34 (9th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976) (dictum), the evidence obtained clearly was cumulative.

If there was error on that point, it was harmless beyond a reasonable doubt in light of the other, overwhelming evidence of guilt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Lopez* (slip op. 210) (9th Cir. January 23, 1978).

CONCLUSION:

The judgment of the district court is affirmed.