PLEUS, J.
In this forfeiture action, Seminole County Sheriff Donald Eslinger appeals an order finding that Arnaldo Martinez was entitled to the return of $29,844.35 out of $56,144.35 seized. Eslinger argues that circumstantial evidence established probable cause to believe that the entire $56,144.35 was contraband. Based upon the low standard required at the adversarial preliminary hearing, we agree and reverse.
Eslinger filed a complaint seeking forfeiture of $56,144.35. The complaint alleged that in January 2006, the sheriffs office conducted a wiretap investigation regarding a drug trafficking organization in Longwood . and Altamonte Springs. Agents intercepted calls between Orestes Sutherland, Pablo Lewis and Arnaldo Martinez. Lewis and Martinez were directing Sutherland to deposit money into several bank accounts. Agents also learned that Lewis and Martinez supplied cannabis to Sutherland. On August 31, 2006, agents *1192 seized $56,144.35 from six bank accounts registered to Martinez.
Martinez requested an adversarial preliminary hearing to determine probable cause. At that hearing, Agent Daniel Moran testified that investigation revealed that Sutherland was a supplier of cannabis and Martinez was “higher up on the food chain.” Agents had court-ordered intercepts for the phones of Martinez and Sutherland. They intercepted and taped several calls between Martinez and Sutherland. In those conversations, Martinez directed Sutherland to deposit money in two accounts ending in 3857 and 6670. In one conversation, Martinez asked Sutherland to deposit $9,000 into one of his bank accounts ending in 3857. Agents later seized money in those two accounts.
They also seized a third Martinez account which contained a fixed-term CD. The money in the CD had been transferred from account number 6670, into which Sutherland had previously deposited money at Martinez’ direction. Moran stated that it was common practice for drug dealers to deposit cash in increments under $10,000 into bank accounts and later transfer that money into CDs. This system was used to avoid reporting requirements, avoid detection by law enforcement and make the money appear to be clean when the CDs matured.
Moran further testified that Martinez had a twenty-year history of drug trafficking. Martinez’ wage, hour and tax records showed no employment or taxes paid in Florida. Based on their observations and intercepted phone calls, agents believed Sutherland was receiving 200-pound shipments of cannabis on consignment, selling it and then depositing money into Martinez’ bank account. Martinez was later stopped on Interstate 10 escorting a vehicle containing 210 pounds of cannabis. Martinez was facing separate criminal charges as a result of this investigation.
Agent Edwin Santos testified that he monitored and translated around 100 phone calls from Spanish to English in this investigation. In those calls, Martinez and Sutherland discussed the sale and distribution of profits from cannabis. In one conversation, Martinez was insistent that Sutherland deposit no more than $9,000.
Megan Greer, records custodian at Bank of America, testified about deposits into three of Martinez’ accounts — 6670, 3857, and 6832. The deposits were all for $9,000 or less and totaled over $200,000. Any deposits of $10,000 or more in one day required a cash transaction report. None of the deposits into Martinez’ accounts generated cash transaction reports. . One of Martinez’ accounts was a $25,000 CD that was established from money transferred from account number 6670.
Orestes Sutherland testified that he delivered cannabis three times for Martinez and deposited money into Martinez’ accounts from the sale of that cannabis. Sutherland identified deposits he made into Martinez’ account from selling cannabis in the following amounts: $5,000, $5,000, $8,800, $4,500 and $4,000. They totaled $26,300. The trial court found probable cause as to the $26,300, but found that Martinez “is entitled to the return of $29,844.35 upon the finality of this order.”
Jurisdiction exists pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(ii) because the lower court ordered that Martinez was entitled to return of some of the money. See also Beary v. Bruce, 804 So.2d 579 (Fla. 5th DCA 2002) (finding jurisdiction to review appeal from a similar non-final forfeiture order because it required sheriff to return some, but not all, property to claimant).
*1193 Eslinger argues that the trial court erred in failing to find probable cause as to the entire amount seized because circumstantial evidence established that all of the money was linked to illegal drug sales and that evidence was unrefut-ed. The de novo standard applies to reviewing a lower court’s probable cause determination in a forfeiture proceeding. City of Coral Springs v. Forfeiture of A 1997 Ford Ranger Pickup Truck VIN#1FTCR10A4VTA62475 FL Tag 3U16BDE, 803 So.2d 847, 849 (Fla. 4th DCA2002).
Section 932.701(2)(a), Florida Statutes (2006), defines contraband as including:
[CJurreney or other means of exchange that was used, was attempted to be used, or was intended to be used in violation of any provision of chapter 893, if the totality of the facts presented by the state is clearly sufficient to meet the state’s burden of establishing probable cause to believe that a nexus exists between the article seized and the narcotics activity, whether or not the use of the contraband article can be traced to a specific narcotics transaction.
(Emphasis added).
In In re Forfeiture of One Hundred Seventy-One Thousand Nine Hundred Dollars ($171,900) in U.S. Currency, 711 So.2d 1269, 1274 (Fla. 3d DCA 1998), the court noted that probable cause for forfeiture may be established by circumstantial and hearsay evidence. In a footnote, the court further explained:
The standard of probable cause to support a forfeiture is less rigorous than that required to prove criminal conduct. For forfeiture, the question is not whether, in fact, the currency or property was used in (or the proceeds of) criminal activity. Rather, the question is whether there is sufficient probability to warrant a reasonable belief that that currency was connected to criminal activity. See e.g., [U.S. v.] Motor Yacht Named Tahuna, 702 F.2d at [1276] 1282 [ (9th Cir.1983) ]; United States v. Johnson, 572 F.2d 227, 234 (9th Cir.1978); see also Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
Id. n. 8 (emphasis in original).
In the instant case, Eslinger presented testimony and documentary evidence directly linking $23,600 to illegal drug sales. The question is whether there was probable cause to believe the remaining $29,844.35 was also used in illegal drug sales.
The unrefuted evidence established that Martinez lived in Florida but had no record of working or paying taxes in Florida. Despite a lack of work history, Martinez had several bank accounts into which a total of over $200,000 was deposited in a one-year period. All of this money was deposited in increments of $9,000 or less, which is a common technique used by drug dealers to avoid reporting requirements and detection by law enforcement.
Of the $56,144.35 seized, $26,300 was directly linked to cannabis sales by Sutherland. In addition, a $25,000 CD was established from an account into which Sutherland had deposited drug money. Agent Moran testified that drug dealers commonly moved money around in bank accounts to avoid detection and into CDs to launder it. Eslinger notes that under federal forfeiture law, “when a claimant to a forfeiture action has actual knowledge, at any time prior to the initiation of the forfeiture proceeding, that claimant’s legitimate funds are commingled with drug proceeds, traceable in accord with the forfeiture statute, the legitimate funds are subject to forfeiture.” U.S. v. One Single Family Residence Located at 15603 85th Ave. *1194 North, Lake Park, Palm Beach County, Fla., 933 F.2d 976, 982 (11th Cir.1991). This rule of law is consistent with section 932.701(2)(a), which expressly states that probable cause may be established “whether or not the use of the contraband article can be traced to a specific narcotics transaction.”
We conclude that while the remaining $29,844.35 was not directly traced to a specific narcotics transaction, there was a “sufficient probability to warrant a reasonable belief’ that this money resulted from illegal drug sales. There was no evidence presented to suggest anything otherwise.
REVERSED.
GRIFFIN and THOMPSON, JJ., concur.