**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 12, Respondent.**

No. 23153.

United States Court of Appeals
Ninth Circuit.

July 7, 1969.

William J. Avrutis (argued), Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, John D. Burgoyne, Washington, D. C., Ralph E. Kennedy, NLRB, Los Angeles, Cal., for petitioner.

Julius Reich (argued), of Brundage & Hackler, Los Angeles, Cal., for respondent.

Before CARTER and HUFSTEDLER, Circuit Judges, and BYRNE, * District Judge.

BYRNE, District Judge.

This case arises upon the petition of the National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), for enforcement of its order. The Board found, in agreement with the trial examiner, that the Union violated Sections 8(b) (2) and 8(b) (1) (A) of the Act, 29 U.S.C. §§ 158(b) (2) and 158(b) (1) (A), by causing Ledford Bros., a contracting firm, to discriminate against and to fire an employee, Thomas Connolly, because he was not a member of the Union. The Board found that the Union had previously refused the employee Union membership. The Board's order requires the Union to make Connolly whole for any loss of pay caused by the unfair labor practice and to notify the company that it has no objection to Connolly's employment without regard to his membership or non-membership in the Union.

Thomas Connolly was a member of the International Union of Operating Engineers, Local Union No. 12, in 1956, when he began working for a company which by a collective bargaining agreement re-

* Honorable William M. Byrne, United States Senior District Judge, Los Angeles, California, sitting by designation.

quired him to join another union. Connolly dropped his membership in the Engineers Union, but did not receive a withdrawal card. In 1962 Connolly sought employment with Ledford Bros., which was subject to a collective bargaining contract with the Engineers Union. This agreement required union membership after eight days on the job; it also provided for the referral of prospective employees through a dispatch or hiring hall according to the priority rating of the prospective employee.

Arthur Ledford, a partner in Ledford Bros., wanted to hire Connolly; he had known Connolly for 20 years and liked his work. The Board found that Ledford and Connolly talked to a Union representative and tried to obtain Connolly's reinstatement in the Union. When this attempt at reinstatement was unsuccessful, Ledford hired Connolly anyway, without going through the hiring hall. For more than two years Connolly worked for Ledford Bros. without incident or complaint from the Union.

Then in May, 1964, Skidmore, the business agent for the Union, spoke to Ledford about Connolly. In January, 1965, Skidmore asked Ledford for the first time to get rid of Connolly because he was not a Union member. Nothing was said, however, about Connolly not being hired through the dispatch hall. In August, 1965, Skidmore spoke to Connolly about his non-Union status; he told him that it would cost $300 to be reinstated, and that he would be placed on the low priority hiring list. Three months later Skidmore talked to Ledford again about Connolly. Ledford said he would try to get Connolly back in the Union and Skidmore told Ledford to send Connolly to the Union hall in Los Angeles. Connolly saw a Union representative in Los Angeles who referred him to the Union office in Santa Ana. There, another Union representative told Connolly that there was no reason to give him consideration; the representative also told Connolly that reinstatement would cost $300 and that he would be placed on the low priority hiring list.

This would mean that he would not be able to retain his job with Ledford Bros. because of the number of men out of work and ahead of him on the list. The representative also mentioned, for the first time, that Connolly was not originally hired through the hiring hall. Connolly did not tender the reinstatement payment, but returned to work the next day.

A month later Skidmore threatened to shut down the company if it did not fire Connolly. Skidmore gave John Ledford, the other partner in the business, a printed form which, under the heading "Reason For Request For Corrective Action", listed two reasons for the request. The first reason—that Connolly was not a Union member—was not checked. The second reason—that Connolly was not hired through the dispatch hall—was checked. Fearing a shut-down, the company terminated Connolly.

Before the Board, the Union took the position that it was merely enforcing the hiring hall provision of its collective bargaining contract; that since Connolly was not hired through the dispatch hall, he could not work for Ledford Bros. The trial examiner and the Board found, however, that this was only a pretext for the Union action. The true reason was Connolly's lack of Union membership. The Board found that this lack of membership resulted from the Union's refusal to reinstate Connolly in 1962, before he began working for the company. This initial refusal prevented Connolly from building up seniority which would have entitled him to a high priority rating on the hiring hall list. Consequently, the Board reasoned, Connolly was not subject to the union-security provision of the contract because of the Union's refusal to allow reinstatement in 1962.

The Union objects to enforcement of the Board's order, urging that the order is not supported by substantial evidence on the record as a whole. Specifically, the Union contends that the Board's finding that the Union refused to reinstate Connolly in 1962, before he went to

work for Ledford Bros., is based on the incompetent hearsay testimony of only one witness, Arthur Ledford. The Union would have the Board disregard this testimony.

This argument is without merit. Ordinarily, where there is no objection to hearsay evidence, it is a clear indication that the evidence is not disputed, hence the absence of objection. Most of Ledford's testimony was not hearsay; he testified that he talked to a Union representative named Greenstreet concerning Connolly's reinstatement before hiring the latter. This is direct, uncontradicted testimony of what Ledford himself did. Ledford also testified that he "understood" that Connolly had contacted the Union about reinstatement before he was hired. There was no objection to this hearsay testimony. "Hearsay, even at common law, if unobjected to when offered, can be of probative value, and certainly occupies a similar position in an administrative proceeding such as this." Fox v. San Francisco Unified School Dist., 111 Cal.App. 2d 885, 891, 245 P.2d 603, 607–608 (1952). A proceeding before the Board is to be conducted in accordance with the rules of evidence applicable in the district courts of the United States, N. L.R.A. § 10(b), 29 U.S.C. § 160(b). Unobjected to hearsay is admissible and of probative value in the district courts. Pearson v. Dennison, 353 F.2d 24, 29 n. 10 (CA 9, 1965). See 29 Am.Jur.2d, Evidence § 494, and 30 Am.Jur.2d, Evidence § 1103.

We agree with the Board that Ledford's uncontradicted testimony constitutes substantial evidence to support the finding that the Union refused to reinstate Connolly before he was hired by Ledford Bros. in 1962. Respondent points out that Connolly himself did not testify on this subject. This is not controlling, however, as there was the uncontradicted testimony of Ledford that he and Connolly spoke to Greenstreet, the Union representative, and were unable to get Connolly reinstated. Respon-

dent did not object to Ledford's testimony, nor did it present evidence in rebuttal—Greenstreet did not testify.

Respondent cites several cases for its view that the Board should have disregarded Ledford's hearsay testimony. These cases are distinguishable as they involve situations not present here; either the hearsay was uncorroborated or contradicted, or there was an objection to it. Consolidated Edison Co. et al. v. N.L.R.B., 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126 (1938) and Oughton v. N.L.R.B., 118 F.2d 486, 490 (3 Cir.1941) indicate that unsubstantiated and uncorroborated hearsay does not constitute substantial evidence upon which to base a finding. These cases are inapplicable, however, as in the present case, Ledford's hearsay testimony is corroborated by his direct testimony based on his own personal knowledge.

In N.L.R.B. v. Lowell Sun Publishing Co., 320 F.2d 835, 841 (1 Cir.1963), the Board found that the company discharged an employee because of his union activity. The Board based this finding partly on hearsay. In thoroughly examining the record, the reviewing court found that the real reason for the employee's discharge was his dereliction of duty, and not an anti-union bias by the company. In the face of this contradictory evidence, the court held that the hearsay testimony could not support the Board's finding. Similarly, in N.L.R.B. v. Amalgamated Meat Cutters, 202 F.2d 671, 673 (2 Cir.1953), the Board found that an employee had been discriminatorily discharged on the basis of hearsay testimony of the employee that a company official had told the employee that the union would not let the company keep him because he was not a union member. There was contradictory evidence—there was no general agreement that new employees must belong to the union and the company official denied making the statement that the union forced the company to discharge the employee. The court held that where there is direct contradictory evidence, hearsay alone cannot amount to substantial evi-

dence to support the Board's finding. These cases are also inapposite. In the instant case, there is no contradictory evidence; the Union did not present the testimony of the Union representative, Greenstreet, or anyone else, contradicting Ledford's testimony. Furthermore, most of Ledford's testimony was not hearsay, but based on his own personal knowledge.

Superior Engraving Co. v. N.L.R.B., 183 F.2d 783, 792, 794 (7 Cir.1950), holds that a trial examiner may properly exclude hearsay testimony. This case, too, is inapplicable. There was no objection to the Ledford testimony as there apparently was in *Superior Engraving*. As discussed above, unobjected to hearsay is admissible and of probative value.

The petition for enforcement is granted.