**PROFESSIONAL SEMINAR CONSULT-ANTS, INC., a corporation, Plaintiff-Appellee,**

v.

**SINO AMERICAN TECHNOLOGY EXCHANGE COUNCIL, INC., and G.Y. Lin, Defendants-Appellants.**

No. 83–1725.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1983.

Decided March 13, 1984.

Harold B. Auerbach, Robert J. Dauphin, Auerbach & Dauphin, San Francisco, Cal., for plaintiff-appellee.

Thomas M. Maddock, and Martin T. Snyder, Sellar, Engleking, Hazard, Snyder & Kelly, Walnut Creek, Cal., for defendants-appellants.

Before WRIGHT, CHOY, and POOLE, Circuit Judge.

EUGENE A. WRIGHT, Circuit Judge:

Professional Seminar Consultants, Inc. (PSC) sought sanctions against Sino American Technology Exchange Council (SATEC) and G.Y. Lin because they had produced falsified documents in this suit for conversion and libel. We find that the magistrate did not abuse his discretion when he entered a default judgment and punitive damages for PSC.

PSC conducts professional seminars abroad. In 1980, PSC paid SATEC to make tour arrangements for a doctor's group

traveling to Hong Kong and China. G.Y. Lin, the owner of SATEC, agreed to handle all land arrangements, including visas, for PSC.

PSC sent checks to Lin, one for $11,450.70 payable to SATEC, the other for $102,042.63 payable to the Peking Medical College for tour accommodations. PSC alleges that Lin deposited the funds in his own name and withdrew all the money.

SATEC failed to make arrangements for visas, which complicated the tourists' plans for accommodations and meetings. As a result, angry patrons sued PSC, Lin, and SATEC in California state court.

Before this incident, PSC had conducted two to three study trips a year for each of the groups of medical specialists involved in this case. They were pathologists and plastic surgeons. Both have since discontinued business with PSC.

PSC brought a district court action for conversion of the $102,042.63 check, libel, and other damages. SATEC counterclaimed. The parties agreed to trial before a federal magistrate.

During discovery, PSC requested an inspection of documents, including, "all books, records, cancelled checks, receipts or other documentation showing what you did with the proceeds of the $102,042.63 check." SATEC agreed to produce these documents as soon as they were sent from Hong Kong.

Pursuant to a discovery order, SATEC produced documents, including photocopies of checks purportedly paid to Peking Medical College, but PSC argued at a pretrial conference that the documents were falsified. PSC brought a motion for sanctions under Fed.R.Civ.P. 37(b). The motion was granted; the defendants' answer and counterclaim were stricken and a default judgment was entered.

SATEC raises six issues on appeal.

## I. *Sufficiency of the Evidence of Falsity*

We review findings of fact related to a motion for sanctions under the clearly erroneous standard. *Wyle v. R.J. Reynolds,* 709 F.2d 585, 589 n. 2 (9th Cir.1983).

■ Contrary to SATEC's assertion that there is no evidence that the documents were false, PSC filed two affidavits and a letter in support of its motion for sanctions. Although one affidavit was based on hearsay, the magistrate could reasonably have found the evidence to be reliable, probative, and admissible. *See* J. Weinstein & M. Berger, 4 *Weinstein's Evidence* ¶ 800[03] (Supp.1982).

SATEC did not challenge the evidence or offer other evidence that the documents were not false. We do not review an issue not raised or objected to below except to prevent a manifest injustice. *Komatsu, Ltd. v. States Steamship Co.,* 674 F.2d 806, 812 (9th Cir.1982). There is no showing of manifest injustice here.

■ SATEC's failure to object to the hearsay allowed the magistrate to consider it for its probative value. *United States v. Jamerson,* 549 F.2d 1263, 1266–67 (9th Cir. 1977). It also bars SATEC from raising the issue on appeal unless plain error exists. Fed.R.Evid. 103(d). The admission of the hearsay was not plain error because the evidence was relevant and probative.

The magistrate's finding that the documents were false was not clearly erroneous.

## II. *Due Process*

SATEC contends that the trial court's failure to conduct an evidentiary hearing about the documents' falsity violated due process.

Due process is a flexible concept which requires "such procedural protections as the particular situation demands." *Dash, Inc. v. Alcoholic Beverage Control Appeals Board,* 683 F.2d 1229, 1233 (9th Cir.1982) (citing *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). What the situation demands is determined by balancing the competing governmental and private interests affected. *Mathews,* 424 U.S. at 334, 96 S.Ct. at 902.

■ A balance of the competing interests weighs in favor of the court's interest in efficiency, compliance with its orders, and deterrence. SATEC had two weeks to re-

spond to the claim of falsified documents. It did not assert that the documents were genuine. Since no evidentiary issue was raised prior to the hearing, it was reasonable for the magistrate to find that an evidentiary hearing was unnecessary. *See Charter House Insurance Brokers v. New Hampshire Insurance,* 667 F.2d 600, 605 (7th Cir.1981).

There was no abuse of discretion in ordering sanctions without an evidentiary hearing. *Charter House,* 667 F.2d at 605.

### III. *Punitive Damage Award*

SATEC challenges the amount of the punitive damages award. The magistrate awarded: (1) $120,000 for special damages for conversion and implied indemnity; (2) $100,000 in general damages for libel; (3) $200,000 in punitive damages for fraud and conversion; and (4) $200,000 in punitive damages for libel. SATEC and Lin assert that the punitive awards are excessive and disproportionate both to the compensatory awards and to the defendants' net worth.

■ A fact finder has considerable discretion in fixing damages. The factors to be considered are (1) the nature of the defendants' acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendants. *Neal v. Farmers Insurance Exchange,* 21 Cal.3d 910, 148 Cal. Rptr. 389, 582 P.2d 980 (1978).

■ *Defendants' Acts.* Lin represented to PSC that all was proceeding smoothly with the groups' visa applications and arrangements in China. Meanwhile, he represented to the Peking Medical College that PSC had not produced the funds (the converted check) that the college required. He represented to the heads of two other medical study groups that PSC was grossly mismanaging the physicians' projected trips to China, implicitly encouraging those groups to avoid dealing with PSC.

Lin's actions damaged not only PSC but also the tour participants. Uncertainty as to whether visas and meetings with Chinese doctors would be arranged as promised created delay and confusion. Because Lin did not obtain their Chinese visas on time, some touring physicians had to remain in Hong Kong for several extra days. PSC managed with difficulty to find hotel accommodations on short notice, but only at additional expense and inconvenience to tour members.

*Amount of Compensatory Damages.* In California, punitive damages must bear a reasonable relationship to actual damages, but there is no fixed formula by which to determine the proper ratio. *Liodas v. Sahadi,* 19 Cal.3d 278, 284, 137 Cal.Rptr. 635, 638, 561 P.2d 316, 319 (1977); *Biundo v. Old Equity Life Insurance Co.,* 662 F.2d 1297, 1300 (9th Cir.1981). An award of $200,000 in punitive damages for fraud and conversion when compared to $120,000 compensatory damages is not unreasonable. Nor is an award of $200,000 punitive damages for a $100,000 libel claim unreasonable.

*Defendants' Wealth.* Defendants assert that, because evidence of their wealth was inconclusive, the basis for determining the appropriateness of the punitive award was inadequate. They admit, however, that defendant Lin alone had a net worth in excess of $1 million. Because the judgment is against both Lin and SATEC, the punitive damage awards are not excessive.

The standard of review of punitive awards under California law is unclear. *Compare Cher v. Forum International Ltd.,* 692 F.2d 634, 640 (9th Cir.1982) (clearly erroneous standard) *with Hasson v. Ford Motor Co.,* 32 Cal.3d 388, 185 Cal.Rptr. 654, 650 P.2d 1171 (1982), *cert. dismissed,* —— U.S. ——, 103 S.Ct. 1167, 75 L.Ed.2d 422 (1983) (substantial evidence standard).

Even under the more rigorous *Hasson* standard, we find that substantial evidence supports the award of punitive damages totalling $400,000.

### IV. *Sanction of Default Judgment*

SATEC asserts that its compliance with the discovery order should have precluded the imposition of sanctions under Fed.R. Civ.P. 37. We consider whether the court abused its discretion in granting the default judgment. *Wyle,* 709 F.2d at 591; *Anderson v. Air West, Inc.,* 542 F.2d 522, 524 (9th Cir.1976).

A district court's use of sanctions is limited by two standards: (1) any sanction must be just; and (2) it must specifically relate to the particular claim at issue in the discovery order. *Wyle,* 709 F.2d at 591. These prerequisites were met. The entry of a default judgment was appropriate in view of the order to produce documents or risk having facts established, and in view of SATEC's production of falsified documents.

We uphold a dismissal sanction under Fed.R.Civ.P. 37(b)(2)(C) only when the noncompliance is due to willfulness, bad faith, or fault of the party. *Wyle,* 709 F.2d at 589; *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976). The magistrate found that the defendants willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses. Dismissal was not an abuse of discretion.

### V. *Availability of Rule 37(b) Sanctions*

SATEC's contention that a magistrate may issue Rule 37(b) sanctions only when a party fails to comply with a Rule 37(a) motion to compel is without merit. A Rule 37(a) motion is not a prerequisite to a Rule 37(b) sanction. Sanctions are available if a party "fails to obey *an order* to provide or permit discovery." The order need not be a Rule 37(a) motion to compel nor must it be a written one. *See Henry v. Sneiders,* 490 F.2d 315, 318 (9th Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974).

A court may impose sanctions for failure to comply with its order, whether or not the opposing party first gave notice by moving to compel. *See United States v. Westinghouse Electric Corp.,* 648 F.2d 642, 649 (9th Cir.1981).

### VI. *Vagueness of Discovery Order*

SATEC's claim that the designation of documents in the discovery order was "impermissibly vague" is inconsistent with its contention that the documents it did produce complied with the court order. Those documents, if genuine, would have complied.

AFFIRMED.

POOLE, Circuit Judge, dissenting:

Despite the majority's effort to apply a gloss of reason, the magistrate's award of punitive damages in this case is shockingly excessive and ought to be set aside. It is patently disproportionate to the wrongful conduct and to the appellants' financial statements. The magistrate's sense of balance seems to have been overcome by the zeal to inflict harsh punishment, even though some punishment was within his discretion.

The awards were as follows:

(1) $120,000 for special damages for conversion (of the $102,000 check) and for "implied indemnity."

(2) $100,000 in general damages for libel—the basis for such damage is unknown.

(3) $200,000 in punitive damages for fraud and conversion.

(4) $200,000 in punitive damages for libel.

This case was essentially a claim for conversion because Lin misappropriated $102,000. The court awarded $120,000 which was full compensation for that loss. It then awarded $100,000 as general damages for the libel because Lin "stone-walled" the plaintiffs while denying the conversion and contending that plaintiffs were responsible.

Not content with awarding $220,000 to an organization which was fully compensated by half that sum, the magistrate next awarded an additional $200,000 as punitive damages for the conduct of fraud and conversion. And above that, he awarded $200,000 more as punitive damages for libel.

In sum, the plaintiffs, who were out of pocket not more than $120,000, got $500,000 more in what amounted to penalty amercements.

The magistrate might well have been incensed at Lin's conduct and could properly impose Rule 37 sanctions. But the size and circumstances of the sanctions here amount to a forfeiture and reflect outrageous vindictiveness. In giving this windfall, there

are no findings justifying the amounts as measured against the appellants' net worth. The appellees suggest that the net worth figure, including the value of Lin's home, may have been a million dollars. No such finding of net worth was made by the magistrate when he fixed damages.

I disapprove what, despite the majority's attempt to explain it, is a forfeiture, and would reverse.