WM. T. THOMPSON CO., a Missouri corporation, Plaintiff,

v.

GENERAL NUTRITION CORPORATION, INC., a Pennsylvania corporation, dba GNC and General Nutrition Center, Inc., a subsidiary of General Nutrition Corporation, a Pennsylvania corporation, Defendants.

GENERAL NUTRITION CORPORATION, INC., et al., Plaintiffs,

v.

WM. T. THOMPSON CO., a Missouri corporation, Defendant.

Nos. CV 78–3206–CHH, CV 78–3891–CHH.

United States District Court, C.D. California.

Jan. 21, 1985.

**120**

Gibson, Dunn & Crutcher, John J. Hanson, Don Howarth, Peter Sullivan, Randolph P. Sinnott, Los Angeles, Cal., Berkman, Ruslander, Pohl, Lieber & Engel, Michael D. Fox, John P. Edgar, Gary L. Goldberg, Pittsburgh, Pa., for General Nutrition Corp. and General Nutrition Center, Inc.

Maxwell M. Blecher, Les J. Weinstein, Robert G. Badal, Scott P. Cooper, Blecher, Collins & Weinstein, Los Angeles, Cal., Davis & Davis, Beverly Hills, Cal., for Wm. T. Thompson Co.

## ORDER RE MONETARY SANCTIONS

CYNTHIA HOLCOMB HALL, District Judge.

The orders of the Honorable Parks Stillwell, Special Master (the "Special Master"), imposing monetary sanctions upon General Nutrition Corporation, Inc. and General Nutrition Center, Inc. (collectively "GNC") are now before the Court. The court has considered the points and authorities submitted by the parties and the relevant materials on file. Oral argument is unnecessary to the disposition of this matter. Local Rule 7.11.

IT IS HEREBY ORDERED that the Special Master's award to Wm. T. Thompson Company ("Thompson") of monetary sanctions totaling $457,068.56 is affirmed. IT IS FURTHER ORDERED as follows:

a. Thompson shall calculate the amount of accrued interest from the date GNC sought district court review to the date of this Order at the rate set forth in Paragraph 9 below. Thompson shall file a statement on or before January 28, 1985, setting forth the total amount of the monetary sanctions (including interest) as well as the calculations it used in determining the amount of accrued interest;

b. If GNC wishes to post a bond regarding the monetary sanctions, GNC shall contact Thompson and the parties shall negotiate the amount of such a bond. The parties shall submit a proposed Order setting forth the amount of the negotiated bond by February 4, 1985. If the parties cannot agree on the amount of the bond by February 4, 1985, they shall file briefs on that date stating their respective arguments regarding this matter. The Court will then take the matter under submission and set the bond;

c. If GNC does not wish to post a bond, the sanctions (including interest) shall be paid on or before February 4, 1985.

This Order is based upon the following:

1. GNC's contention that Thompson can recover only fees and expenses for four categories of expenses listed in this Court's September 7, 1984, Findings of Fact and Conclusions of Law (the "September 1984 Findings and Conclusions") is disingenuous. See *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F.Supp. 1443 (C.D. Cal.1984) (Hall, J.). Even a cursory reading of the September 1984 Findings and Conclusions reflects that the listed categories were a noncomprehensive summary of the fees and expenses awarded by the Special Master. See Special Master's Orders of January 4, 1982, April 26, 1982, and July 26, 1982. This Court's summary of the Special Master's Orders was not intended to limit the scope of Thompson's recovery.

2. GNC's arguments limiting the time period of the monetary sanctions are also without merit. The September 1984 Findings and Conclusions do not provide

that Thompson is entitled only to fees and expenses beginning in May 1981. Although Thompson's first motion to compel seeking sanctions was not filed until May 1981, a motion to compel under Fed.R. Civ.P. 37(a) is not a prerequisite to the imposition of sanctions under Rule 37(b). *Professional Seminar Consultants v. Sino Am. Tech. Exchange Council, Inc.* 727 F.2d 1470, 1474 (9th Cir.1984). All that is required is "an order to provide or permit discovery" and the violation of the discovery order. Fed.R.Civ.P. 37(b). *See Tamari v. Bache & Co., (Lebanon) S.A.L.,* 729 F.2d 469, 472 (7th Cir.1984); *Professional Seminar, supra.* Moreover, the discovery order need not be a written one. *Professional Seminar, supra; Henry v. Sneiders,* 490 F.2d 315, 318 (9th Cir.) (per curiam), *cert. denied,* 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974).

3. In this case, an oral discovery order requiring GNC to produce documents, including documents relating to suppliers of Thompson's products (but not the identity of the suppliers), was in effect no later than January 21, 1980 (the "January 1980 Order"). An examination of the hearing transcript on that date indicates that the Special Master orally ordered that certain documents, including the supplier documents, be produced. *See* Reporter's Transcript (January 21, 1980), at 60–70. This oral Order was reduced to writing and approved as to form by GNC on March 7, 1980. *See* September 1984 Findings and Conclusions, Findings ¶ 35, 593 F.Supp. at 1449. Even prior to the January 1980 Order, the Special Master had made an oral document preservation order following a hearing on July 17, 1979 (the "July 1979 Order"). *Id.* Findings ¶¶ 18–31, at 1447–49. This Order was reduced to writing and filed on September 14, 1979. The Court concludes that the July 1979 Order was the first order to provide or permit discovery issued by the Special Master upon which monetary sanctions may be awarded under Rule 37(b).[1]

1. GNC correctly argues that an order to provide   or permit discovery must be in existence before

4. Beyond Rule 37(b), this Court possesses inherent power to sanction litigants for abusive litigation practices that are taken in bad faith. *Id.* Conclusions ¶¶ 6–7, at 1444–45. Imposition of severe sanctions is required in this case by the severity of the abuses that took place. From the inception of this litigation, GNC was on notice that certain records it possessed were relevant to the litigation or at least were reasonably calculated to lead to the discovery of admissible evidence. *Id.* Findings ¶¶ 5–11, at 1444–46. GNC nonetheless destroyed these and other relevant records. *Id.* Findings ¶¶ 12–31, at 1446–49. The Court concludes that Thompson is entitled to an award of monetary sanctions for the period from August 1978 through July 1979 in addition to the Rule 37(b) sanctions applicable for work done after the July 1979 Order.

5. In determining the amount of monetary sanctions, the court has been guided by cases interpreting analogous statutory provisions permitting the recovery of "reasonable" attorney's fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433–37, 163 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983) (civil rights statute); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384–85 (9th Cir.1984) (federal trademark law); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir.1975) (Labor-Management Reporting and Disclosure Act), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). The Court has reviewed the extensive billing records in this case and has fully considered the twelve factors listed as relevant in *Kerr* to the determination of a reasonable fee award. Although the monthly billing summaries submitted by Thompson are sufficient to support the award requested and to permit GNC to oppose the award,

the Court has also reviewed the *in camera* submission of Thompson's actual daily billing records to further verify the requested amounts. As discussed below, the Court affirms the amount of monetary sanctions awarded by the Special Master.

6. Based upon Thompson's evidence relating to the customary fee in the Los Angeles area and considering the other *Kerr* factors, the Court finds that the following hourly rates charged by Thompson's counsel were reasonable:

a. Paralegals—$40 in August 1978 increasing periodically to $50 after August 1981;

b. Law clerks—$55;

c. Associates—$50 for junior associates and $85 for senior associates in August 1978 increasing periodically to $80 for junior associates after October 1981;

d. Partners—$85–$105 for junior partners and $125 for senior partners in August 1978 increasing periodically to $135 for junior partners and $190 for senior partners after October 1981.[2]

The Court notes that GNC has presented no evidence to challenge the reasonableness of these hourly rates.

7. Thompson has filed summaries showing actual fees and expenses totaling $665,348.73, a sum over $200,000 more than Thompson sought before the Special Master. Thompson now requests that this larger sum be awarded. Just as in the private sector, "billing judgment" is an important component in assessing a reasonable fee award. *Hensley, supra*, 461 U.S. at 434, 103 S.Ct. at 1940. While the Court recognizes that some billing judgment occurred with respect to the larger fee request, the Court concludes that the $457,-

---

Rule 37(b) sanctions may be awarded. *See* 8 C. Wright & A. Miller, *Federal Practice & Procedure*, Civil § 2289, at 790 (1970). Although Rule 37(a) permits the award of expenses for securing an order compelling discovery, Thompson never sought Rule 37(a) expenses and the Special Master did not rely upon Rule 37(a) in awarding sanctions. Under these facts, Thompson is not entitled to monetary sanctions *under Rule 37(a)* for work done prior to the July 1979 Order. *See Liew v. Breen*, 640 F.2d 1046, 1051

(9th Cir.1981); *David v. Hooker, Ltd.*, 560 F.2d 412, 419 (9th Cir.1977).

**2.** Junior associates included Scott Cooper, Mary Delaney, Curtis Graham, Jaqueline Hood and Barbara Potaschnik; senior associate was Jerold Fagelbaum; junior partners included Robert Badal, Roger Heyman and Douglas Rawlings; senior partner was Les Weinstein.

068.56 originally sought by Thompson before the Special Master reflects a truer billing judgment. The lower amount more accurately reflects the number of hours reasonably expended by Thompson's counsel in effectively pursuing and uncovering GNC's misconduct. *See Sealy, supra,* 743 F.2d at 1385. In awarding the lower amount, the Court notes that the approximate one-third reduction from Thompson's actual fees and expenses results in a conservative fee award and eliminates any concern over minor computational errors or improper billings that may have occurred with respect to the larger fee request.

8. The Special Master's Orders awarding monetary sanctions in the amount of $375,592.22 (April 26, 1982), $77,720.34 (July 26, 1982), and $3,756.00 (July 26, 1982) are affirmed. Thompson is entitled to recover from GNC monetary sanctions totaling $457,068.56, which were incurred by Thompson as follows:

a. $138,482.65 in bringing on its November 12, 1981 motion and renewed motion for sanctions and for dismissal and default;

b. $67,483.73 in connection with the computer related document production and depositions taken pursuant to the Special Master's July 30, 1981 order;

c. $20,775.89 in bringing on its motion to compel filed May 15, 1981 (this amount reflects a $14,068.00 reduction for monetary sanctions already paid by GNC regarding this matter);

d. $20,390.82 in preparing its motion for an evidentiary hearing and sanctions filed on June 19, 1981;

e. $128,459.13 in seeking the preservation, identification and/or production of records determined by the Special Master to have been destroyed (this amount includes $17,500.00 for work done prior to the July 1979 Order);

f. $77,720.34 in attempting to obtain discovery of the suppliers of Thompson's products and in attempting to obtain compliance with the Special Master's orders relating to the supplier documents (this amount does not include sanctions already paid by GNC pursuant to the Special Master's orders); and

g. $3,756.00 in connection with GNC's violation of the Local Rules regarding the June 2, 1982 hearing.

9. The Court reaffirms its earlier decision to award interest on the monetary sanctions imposed by the Special Master but concludes that the applicable rate is specified by 28 U.S.C. § 1961 rather than 26 U.S.C. § 6621 as previously ordered. An award of pre-judgment interest under § 1961 is within the discretion of the Court. *See Western Pac. Fisheries, Inc. v. SS President Grant,* 730 F.2d 1280, 1288–89 (9th Cir.1984); *Bricklayers' Pension Trust Fund v. Taiariol,* 671 F.2d 988, 989 (6th Cir.1982). Interest in this case shall be calculated from the date GNC sought district court review "at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date" GNC sought review. 28 U.S.C. § 1961(a). *See Western Pac. Fisheries, supra,* 730 F.2d at 1289.