**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Juan FERNANDEZ,**
**Defendant-Appellant.**

**No. 83–1192.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 17, 1984.

Decided Sept. 4, 1985.

Duniway, Circuit Judge, filed dissenting opinion.

Edward R.J. Kane, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Richard A. Wright, Las Vegas, Nev., for defendant-appellant.

Before DUNIWAY, FLETCHER, and FERGUSON, Circuit Judges.

PER CURIAM.

Juan Fernandez appeals from his conviction by the district court for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2 (1982). The only question on appeal is whether the district court properly denied Fernandez's motion to suppress a quantity of cocaine that was seized from a suitcase he transported from Miami to Las Vegas, based upon Fernandez's lack of standing to raise a fourth amendment claim. We reverse and remand.

## FACTUAL BACKGROUND

Fernandez boarded a flight from Miami to Las Vegas on February 9, 1982, after checking a single, medium-sized, soft-sided black suitcase. While at the Miami airport, Fernandez attracted the attention of Dade County Detective Charles Thompson, who telephoned Special Agent David Taketa of the Drug Enforcement Administration (DEA) in Las Vegas with a description of Fernandez and his black bag. By the time Fernandez's flight arrived in Las Vegas, Taketa had made arrangements to have a specially-trained narcotics detector dog, "Marc the Narc," sniff the suitcase when it reached the baggage handling area. The dog "hit" on a black bag matching Thompson's description of Fernandez's suitcase.

The bag was placed on the conveyor belt leading to the baggage carousel for Fernandez's flight. Near the baggage carousel Taketa observed an individual matching Fernandez's description talking with another man, who turned out to be William Crespo. When the black suitcase appeared, Fernandez pointed to it, and Crespo walked over to the carousel, retrieved the bag, and walked back toward Fernandez. At that point, Taketa and several other law enforcement agents, including Nevada State Narcotics Agent Tom O'Brien, identified themselves to Fernandez and Crespo.

Taketa questioned Crespo in English, while O'Brien questioned Fernandez in Spanish. Taketa does not speak Spanish, but O'Brien allegedly told him some of the statements Fernandez made. After a short period, Fernandez and Crespo were taken upstairs to the DEA Security Office, and Crespo was told that he would be held there until a search warrant was obtained for the suitcase. Shortly thereafter, Crespo provided the suitcase's combination to Taketa, and when the bag was unlocked, an orange sack containing about a kilogram of cocaine was discovered. Crespo and Fernandez were arrested. A baggage claim

check for the bag was found in Crespo's pocket.

After a suppression hearing at which only Agent Taketa testified for the government, the district court found that Crespo's "consent" to search the black suitcase had not been given voluntarily. The magistrate found that the circumstances under which Crespo gave his consent were "virtually identical" to those in *United States v. Ocheltree,* 622 F.2d 992 (9th Cir.1980), where this court found that consent was impermissibly coerced. In *Ocheltree,* DEA agents requested consent from an individual at an airport to search his briefcase and "clear[ly] impli[ed]" a "threat that [an] unreasonable detention, amounting to arrest, would result if consent were denied"; at the time, the "agent[s] did not have probable cause to believe that [the individual] was in possession of narcotics." *Id.* at 994. In the present case, the magistrate found that Taketa did not simply *imply* that Crespo and Fernandez would be detained, as had been the case in *Ocheltree;* instead, Taketa *"directly advised"* Crespo to that effect. As a result, the magistrate recommended, based on *Ocheltree,* that the

seized cocaine should be suppressed as to Crespo. The district court adopted in full the findings and recommendations of the magistrate, and suppressed the cocaine as to Crespo.

■ However, the magistrate and district court concluded that Fernandez did not have standing under the fourth amendment to challenge the search of the suitcase, because he had failed to establish a "legitimate expectation of privacy in the suitcase." The court found that in light of the evidence before it, Fernandez had failed to establish that he owned or possessed the black suitcase, and that even if he had possessed the suitcase at one time, "he had abandoned it and disavowed any connection with it by the time he was encountered by Agent Taketa." The court allowed the cocaine from the suitcase to be introduced into evidence against Fernandez, and it was based on this evidence that he was convicted.[1] In his appeal, Fernandez focuses exclusively upon the district court's determination that he lacked standing to challenge the search of the black suitcase, and that is the sole issue we now address.[2]

---

1. Following the district court's denial of his motion to suppress, Fernandez and the government agreed to submit one count of his indictment to the district court on stipulated evidence. The prosecutor indicated at the time that the parties' agreement was "in the nature of a negotiated plea," and was designed specifically "to allow [Fernandez] the right to appeal the adverse decision on the suppression motion." The parties were attempting to accomplish what is now possible under Federal Rule of Criminal Procedure 11(a)(2), as amended in 1983.

2. The dissent maintains that when the district court "tried" Fernandez based on the stipulated record, it concluded that the seized cocaine could be admitted into evidence against him based not on Fernandez's lack of fourth amendment standing, but on the fact that the seizure and search of the black suitcase did not violate the fourth amendment. According to the dissent, the district court changed the position it had originally adopted concerning Crespo's and Fernandez's motions to suppress, and concluded for the first time that Taketa and the other law enforcement agents had probable cause to detain and arrest Crespo at the Las Vegas airport. Such a change in the district court's position would render meaningless the question of Fer-

nandez's standing, upon which the parties have focussed this appeal.

However, the record does not support the dissent's reading of the district court's findings. First, those findings are ambiguous, and do not clearly indicate that the court intended to alter its position on Crespo's consent. The district court simply stated that *"[a]s far as Fernandez is concerned,* the bag was searched with the consent of Crespo": admittedly this statement could be read as the dissent reads it, but it can just as easily be read simply to indicate that Fernandez lacked standing to challenge the consent to search.

Second, the actions of the district court and the parties do not support the conclusion that the district court changed its position concerning Crespo's consent. As noted above, the district court had previously suppressed the cocaine as to Crespo, resulting in the dismissal of his indictment; it is extremely unlikely that the court would simply change its position concerning the legality of the airport search without some clear statement that it was doing so. Moreover, as the dissent acknowledges, neither party said anything at the time the district court allegedly changed its position, and neither party has argued or even mentioned this possibility on appeal.

## ANALYSIS

The parties are in essential agreement concerning the legal standards to be applied in resolving the questions of fourth amendment standing and abandonment. *See, e.g., Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978); *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *United States v. Salvucci,* 448 U.S. 83, 93, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980); *United States v. Mendia,* 731 F.2d 1412, 1414 (9th Cir.1984); *United States v. Pollock,* 726 F.2d 1456, 1465 (9th Cir.1984). Therefore, the resolution of this case turns on what the testimony relating to Fernandez was and what portions of it should have been considered by the district court.

Third, Fernandez agreed to submit his case on stipulated evidence specifically so that he could appeal the district court's ruling on his suppression motion. Any subsequent change in the district court's position on or basis for denying that motion would potentially affect Fernandez's appeal, and would have required the district court to vacate the conditional plea agreement and provide Fernandez an opportunity to reconsider his position. Otherwise, the district court could trap Fernandez into agreeing to a stipulated record and forgoing trial, and then effectively eliminate his ground for appeal. *See generally* Fed.R.Crim.P. 11(a)(2) and Advisory Committee Note. The district court's failure to vacate the conditional plea agreement suggests that it did not intend to alter the basis for its ruling on Fernandez's suppression motion.

Fourth, the magistrate explicitly stated that the circumstances in this case were "virtually identical" to those in *Ocheltree,* where there was no probable cause to detain or arrest the subject, and the district court adopted that finding. The dissent completely ignores this portion of the district court record, and simply suggests that the magistrate's reference to *Ocheltree* was an inadvertent mistake, since *Ocheltree* involved a situation where probable cause was lacking, and since, according to the dissent, probable cause existed in the present case. Yet it is unreasonable to assume that the magistrate and district court simply misread and incorrectly cited *Ocheltree.* This court explicitly stated in *Ocheltree* that consent had been impermissibly coerced because an "unreasonable detention" was involved; we expressly distinguished the situation in *United States v. Agosto,* 502 F.2d 612, 614 (9th Cir.1974), where we had previously held that a defendant *can,* under certain circumstances, voluntarily consent to a search of his premises or property even after law enforcement officials have secured those premises or that property so they can seek a search warrant. *See Ocheltree,* 622 F.2d at 994; *see also United States v. Salvador,* 740 F.2d 752, 757 (9th Cir.1984). Given that the magistrate and district court were aware of both *Ocheltree* and *Agosto,* the fact that they compared the circumstances surrounding Crespo's consent to those in *Ocheltree* rather than *Agosto* is significant; moreover, given the absence of more explicit statements concerning Crespo's detention and seizure in the district court record as it current-ly stands, for purposes of this appeal, we must interpret the statements in the record comparing Crespo's situation to that in *Ocheltree* as a finding that Crespo was threatened with an "unreasonable detention," *Ocheltree,* 622 F.2d at 994, or some other "oppressive conditions" prior to giving his consent. *Salvador,* 740 F.2d at 757. We cannot overturn such a finding unless it is "clearly erroneous." *United States v. Licata,* 761 F.2d 537, 544 (9th Cir.1985); *Salvador,* 740 F.2d at 757 n. 3. If we are reading too much into the district court's references to *Ocheltree,* the district court can clarify its findings on remand.

Finally, the dissent maintains that the district court could have found that probable cause existed to arrest Crespo and Fernandez as soon as the black suitcase was retrieved, based on Marc the Narc's "hit" on the suitcase. However, for this court to reach such a conclusion based on the current record would be to usurp the functions of the district court. The magistrate and district court made no such finding concerning probable cause to arrest Crespo and Fernandez at the baggage carousel, nor has the government argued that such a finding should have been made. We cannot simply infer the existence of probable cause from the facts before us: as we stated in *United States v. Spetz,* 721 F.2d 1457 (9th Cir.1983), upon which the dissent relies, the mere fact that a dog has "hit" on a piece of baggage or cargo does not, in the absence of any factors supporting its reliability, establish probable cause. *See id.* at 1464. The dissent quotes a statement by the district court that the dog's "hit" on the black suitcase was "strong evidence" that the bag contained narcotics. However, without evidence supporting Marc the Narc's reliability, the district court's statement cannot be deemed to be a finding of probable cause; if it were intended to be such a finding, it would be clearly erroneous. *See id.* Moreover, although the district court found that the initial detention of Crespo, Fernandez, and the suitcase was justified, it never made findings that probable cause and exigent circumstances existed to justify a full-scale warrantless seizure of the two men and the suitcase. *See United States v. Licata,* 761 F.2d at 540–44. These are all issues which the district court can consider on remand, but which are improper for this court to attempt to resolve based on the current state of the record.

■ From our review of the record, we conclude that all the testimony admissible as to Fernandez tended to support his claim that he had a reasonable expectation of privacy in the suitcase and its contents. *Mendia*, 731 F.2d at 1414; *Pollock*, 726 F.2d at 1465. Although this testimony was based on hearsay, it was introduced by the government, and since Fernandez's counsel did not raise a hearsay objection on behalf of his client, it could have been considered by the district court for its probative value. *Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc.*, 727 F.2d 1470, 1472 (9th Cir.1984); *United States v. Jamerson*, 549 F.2d 1263, 1266–67 (9th Cir.1977); *Castillo-Garcia v. United States*, 424 F.2d 482, 485 (9th Cir.1970).

■ Agent Taketa testified that according to Detective Thompson, Fernandez checked the black suitcase at the airline ticket counter in Miami.[3] Taketa further testified that when he initially asked Crespo if the suitcase was his, Crespo "said no, it was Mr. Fernandez's."[4] Finally, Taketa testified that when the black bag appeared on the baggage carousel, Fernandez pointed it out to Crespo. Although this testimony is not conclusive standing alone, it also tends to support Fernandez's claims that he had a reasonable expectation of privacy in the suitcase.[5] Since there is no evidence in the record indicating that Fernandez lacked an expectation of privacy in the suitcase prior to his contact with Taketa and O'Brien, we cannot accept the district court's conclusion that Fernandez failed to demonstrate a fourth amendment interest. *Pollock*, 726 F.2d at 1465.

■ The government argues that even if Fernandez had initially been in possession of the suitcase, the evidence indicates that he subsequently abandoned the bag by the time he was questioned by O'Brien. Taketa testified that according to O'Brien, Fernandez denied ownership of the bag several times during their conversation in Spanish. However, Fernandez's counsel objected to this testimony on hearsay grounds at the suppression hearing, and it was admitted only on the condition that O'Brien himself would testify at a later time and be subject to cross-examination by Fernandez's counsel. O'Brien never testified, and therefore this evidence was never admitted as to Fernandez. It was the government's obligation to produce O'Brien, since the admission of the government's own evidence was conditioned upon O'Brien's testifying, and since the government had the burden of establishing abandonment. *See Mendia*, 731 F.2d at 1414; *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir.1983); *United States v. Alden*, 576 F.2d 772, 776 (8th Cir.1978); *United States v. Colbert*, 474 F.2d 174, 177 (5th Cir.1973); *United States v. Robinson*, 430 F.2d 1141, 1143 (6th Cir.

---

**3.** This testimony was admissible as to Fernandez, because his counsel did not object to Taketa's testimony concerning Thompson's version of *what Fernandez did* at the Miami airport, but only objected to that portion of Taketa's testimony involving *"conclusions" about Fernandez's behavior* drawn by Thompson. Fernandez's attorney specifically stated that: "I don't have any objection to him [Taketa] testifying as to what [Fernandez] did, but when we get into conclusions [by Thompson] as to what is characteristically and what is uncharacteristically [Fernandez's behavior], that's improper." Fernandez's counsel also stated that "I think he [Taketa] can testify as to what [Thompson] told him," but that "I do, however, object ... to the conclusions that may have been made of the gentleman in Miami." The record is not clear as to what the district court's precise ruling was on this objection, but it is clear that Fernandez's counsel did not object to Thompson's testimony that Fernandez checked the black suitcase in Miami. Therefore, this testimony was in evidence as to Fernandez. *See Professional Seminar Consultants*, 727 F.2d at 1472.

**4.** Since Fernandez's counsel did not object to this testimony by Taketa, it is also admissible in his client's behalf. *See Professional Seminar Consultants*, 727 F.2d at 1472.

**5.** The fact that Crespo knew the combination to the suitcase and was able to open it for the government agents does not indicate that Fernandez did not own the bag, nor does it refute Fernandez's claim that he had a reasonable expectation of privacy in the bag. In addition, the fact that Crespo had the baggage claim check in his pocket does not indicate that the bag was his and not Fernandez's, since Fernandez had checked the bag in Miami and had presumably been given the claim check at that time.

1970). The government cannot now blame Fernandez for O'Brien's failure to testify. As a result, there is no evidence in the record that Fernandez abandoned the black suitcase, and the district court's conclusion regarding abandonment is clearly erroneous. *Id.*

### CONCLUSION

We therefore reverse the district court's determination that Fernandez lacked standing under the fourth amendment to challenge the search of the black suitcase. We remand to the district court for further proceedings consistent with this decision.

REVERSED and REMANDED.

DUNIWAY, Circuit Judge, dissenting:

I must respectfully dissent. The case that both parties describe in their briefs, and that is described in the majority opinion, is not the case that is before the court. To make clear the reasons for my dissent, I must describe in some detail what actually happened in the trial court.

#### I. *The Facts.*

Fernandez and one Crespo, and others, were charged in an indictment and superseding indictment with various offenses involving bringing a quantity of cocaine from Florida to Nevada. The cocaine was found in a suitcase that Fernandez brought from Miami to Las Vegas. When officers stopped Fernandez in the Las Vegas airport, Crespo was carrying the suitcase. After some conversations, he told one of the officers to open the suitcase, and the cocaine was found.

Both defendants moved to suppress the cocaine. At a hearing before a magistrate, Las Vegas Drug Enforcement Agent Taketa was the only witness. His testimony was substantially as follows:

Taketa received a telephone call from a detective at the airport in Miami, who said that he had watched Fernandez, travelling under the name "Garcia," check in for a flight to Las Vegas, that Fernandez's behavior made the detective suspect that he was carrying contraband, and the detective obtained the baggage claim number of Fernandez's suitcase, and then telephoned Taketa, gave Taketa the number, and alerted him to Fernandez's expected arrival. Fernandez's lawyer expressly stated that he did not object to this evidence.

Taketa and a detective with a trained drug-sniffing dog were in the baggage handling area when the plane arrived, and the dog "hit" on the suitcase. The suitcase then was sent on to the baggage claim area. Taketa met two Nevada agents, Wellington and O'Brien, at the baggage claim area. They saw Fernandez and co-defendant Crespo standing near a telephone booth. When the suitcase appeared on the carousel, Fernandez pointed to it and Crespo retrieved it. The two then started to leave, with Crespo carrying the suitcase. Taketa and O'Brien stopped them.

The agents said that they wished to ask some questions and learned that Fernandez spoke only Spanish. Taketa did not speak Spanish; O'Brien did. O'Brien asked Fernandez in Spanish if the suitcase was his. Fernandez replied in Spanish, and denied that it was his, and said that it was Crespo's. Taketa asked Crespo in English if the suitcase was his. Crespo said in English that it was not, that it was Fernandez's. Fernandez and Crespo each repeatedly denied owning the suitcase. Fernandez's counsel objected to Taketa's testimony about what Fernandez was asked by O'Brien and replied to O'Brien, as hearsay. After some discussion, the Magistrate received it but "with the understanding that Mr. O'Brien will have to testify." O'Brien never testified. The testimony was admitted against Crespo only.

The agents and the suspects then went to the airport office of the Drug Enforcement Administration. Taketa told Crespo that he intended to go downtown to apply for a warrant to search the suitcase. After a brief conversation in the hallway, away from Fernandez, Crespo told Taketa to look in the suitcase. Taketa told Crespo that he could still demand at any time that Taketa get a search warrant, but Crespo repeated

that Taketa should look in the suitcase. Crespo told Taketa the combination of the lock, and Crespo opened the suitcase. It contained about a kilogram of cocaine. Taketa told Crespo that he was under arrest. When Crespo emptied his pockets, he produced the claim check for the suitcase.

At the end of the hearing, the magistrate said that he was reserving ruling on the admissibility against Fernandez of Taketa's testimony about what O'Brien told him that Fernandez said in Spanish. The magistrate did not formally make such a ruling, but he did rely on some of that evidence in recommending denial of Fernandez's motion to suppress, even though O'Brien had not testified.

The magistrate found that Fernandez had no standing to object to the search because he had transferred possession of the suitcase to Crespo and also, by his disavowals of ownership, had abandoned it. *See United States v. Veatch*, 9 Cir., 1981, 674 F.2d 1217, 1220–21; *United States v. Kendall*, 9 Cir., 1981, 655 F.2d 199, 201; *Lurie v. Oberhauser*, 9 Cir., 1970, 431 F.2d 330, 333. The magistrate also found that Crespo did have standing and recommended that the district court grant Crespo's motion to suppress because his consent was not voluntary. Later, the trial judge adopted the magistrate's findings. Order of May 17, 1983.

On appeal, Fernandez attacks the magistrate's finding that Fernandez lacked standing to suppress the fruit of an illegal search. In doing so, Fernandez disregards what happened later. Instead of going to trial in the usual way, Fernandez and the prosecutor agreed upon what has sometimes been called a slow plea of guilty, the purpose being to preserve the defendant's right to appeal and to attack, on appeal, the failure to suppress vital evidence, in this case the contents of the suitcase.

The parties agreed that all counts of the indictment but one would be dropped, and that only Count VII would be before the court, on stipulated evidence. Because the terms of the bargain are important, I quote them verbatim. When the parties appeared before the judge for trial, the prosecutor stated:

Your Honor, there has been agreement reached between the Government and the defense subject, of course, to the approval of the Court. The agreement is as follows: As to Count VII of the Indictment on file herein which charges Defendant Juan Fernandez with the offense of Possession of Cocaine with Intent to Distribute, counsel have agreed to submit the matter to the Court based on the following items—

. . . A Dade County Public Safety Department Organized Crime Bureau Report in four pages, which has been marked as Plaintiff's Exhibit 1; a United States Drug Enforcement Administration Report consisting of seven pages, which has been marked as Plaintiff's Exhibit 2 dealing with the arrest of Mr. Fernandez on February 9, 1982, and a reporter's transcript of the Motion to Suppress the Evidence that was seized at the airport, which has been marked as Plaintiff's Exhibit 3.

In addition, the Government and [defense] have agreed to stipulate that the substance in the suitcase which was seized on February 9, 1982 was in fact the controlled substance cocaine.

Rep. Tr. III, June 7, 1983, at 3–4. The prosecutor added that the government would drop the six other counts if the court found Fernandez guilty under Count VII. The prosecutor concluded:

Finally, the government will be standing silent at the time of the imposition of sentence. So, it is in the nature of a negotiated plea, but we are submitting the matter on the record, obviously, to allow Mr. Wright, on behalf of his client, the right to appeal the adverse decision on the suppression motion.

*Id.* at 4.

Counsel for Fernandez said: "That is a correct statement your Honor." The court replied: "Very well. And it is stipulated to as well; is that correct?" Counsel agreed.

The court took the matter under advisement, and Fernandez waived his right to be present when the decision was entered. *Id.* at 4–5. On June 10, the court announced its decision, stating first:

The defendant having waived a jury trial and having stipulated that the Court would consider the documents introduced as Exhibits 1 and 2, and upon those documents make a determination as to the issues submitted by those documents which pertain to the search and seizure of one traveling bag brought by Juan Fernandez on an aircraft from Miami International Airport to McCarran International Airport in Las Vegas, Nevada, and upon that determination of that issue the guilt or innocence of the defendant would be determined [sic].

Rep. Tr. IV, June 10, 1983, at 3. The court then set out the facts, based on the stipulated evidence, especially the DEA report [Plaintiff's Exhibit 2). The immediately pertinent part of the findings is as follows:

Now, when the bag was received by the clerk at the carousel it was picked up from the carousel itsel [sic] by Crespo and the officers moved in and began to interrogate [Crespo and Fernandez]. It is quite an unusual situation in that Crespo denied knowing Fernandez and Fernandez denied knowing Crespo. . . .

The bag was placed in the baggage office of the airline at the airport, and Crespo and Fernandez were asked to go to the office of security in the airport building where further conversation occurred. One detective was dispatched to go to the city and secure a search warrant. Some time shortly after the officer was dispatched to get a search warrant to search the suitcase the conversation between Crespo and one detective took place.

After some hypothetical questions from Crespo to the detectives as to what might occur if nothing was in the bag and after being told that if only money was in the bag and they brought money here for the purpose of gambling, that the matter, of course, would be promptly dropped and forgotten. After further

hypothetical conversation between the detective and Crespo he consented to the search of the bag.

They returned to the baggage area and secured the bag from the office. The bag was opened and found to contain narcotic drugs or controlled substances, schedule II controlled substances under The Act.

. . . . .

[T]his case clearly shows that Crespo secured the bag, which was suspect from reliable evidence, from the carousel, and that he had it in his possession after he took it from the carousel. He surely had the right to consent to the search. There is no question that he did consent to the search.

As far as Fernandez is concerned, the bag was searched with the consent of Crespo. Crespo was the last person to have the bag in his possession. It is reasonable to infer that Fernandez brought the drug here for him. The evidence clearly shows that Fernandez not only had in his possession the narcotic drug in this district, but he also transported the same.

So, upon that analysis of the evidence, I find that the search was reasonable and proper under the circumstances. The evidence was legally and properly seized. I find the defendant guilty of Count VII of the Indictment.

*Id.* at 5–7.

Fernandez's counsel was present, made no objection, and noted a schedule conflict, and the time for sentencing was reset. *Id.* at 7. Neither at the June 10 hearing or at any time later did counsel object to the judge's findings or his conclusion, contrary to the magistrate's recommendation, that the search and seizure of the cocaine in the suitcase was legal because of Crespo's consent. Counsel never suggested that what the judge did was inconsistent with the stipulation made at the June 7 hearing.

Nowhere in appellant's brief is there any mention of these findings by the district judge. Nowhere in appellant's brief is

there any mention of the unqualified stipulation under which the Dade County Crime Bureau and the DEA reports, along with the transcript of the suppression hearing before the magistrate, were submitted to the district judge. None of this was mentioned at any time in counsel's oral argument before us on Fernandez's behalf. Nor did counsel for the United States say anything about the stipulation, the evidence that was before the judge under that stipulation, or the findings that the judge made under that stipulation, either in brief or argument. I find both counsels' behavior a mystery. I find also the majority's opinion incredible.

It may be claimed that the two reports, exhibits 1 and 2, were intended for consideration by the judge only upon what is sometimes referred to in such a case as the "guilt phase" of the proceeding, rather than upon the validity of the search. Perhaps. But if that was the parties' intent, they never told the court so. The exhibits were offered without any qualification, and when the judge announced his decision, it became clear that he had considered them, and especially exhibit 2, on the "suppression" phase of the case. That was the key question; guilt was, in substance, admitted. Yet defense counsel never objected. Under these circumstances, the two reports, as well as the transcript of the magistrate's hearing, were in the record for all purposes. When evidence is received without objection or limitation, it is in the record for all purposes. This proposition is so obvious as not to require citation of authority. Moreover, here there was more. The evidence was stipulated to.

The fact that the prosecutor said at the June 7 trial day, "it is in the nature of a negotiated plea, but we are submitting the matter on the record, obviously, to allow Mr. Wright [counsel for Fernandez], on behalf of his client, the right to appeal the adverse decision of the suppression motion" does not make it improper for the district judge to reconsider the decision of the magistrate on the suppression motion. Had the judge done so in favor of Fernan-

dez, he would have had to acquit. I doubt that his counsel would have objected.

If the case had been submitted on the magistrate's decisions of July 13, 1982 and February 3, 1983, recommending denial of Fernandez's motion to suppress, and on the court's order of May 7, 1984, adopting that decision, we might have a different case. But it was not.

## II. *The Law.*

The two reports were, of course, hearsay. But hearsay evidence received without objection or limitation is as much evidence as any other. *NLRB v. Int. Union of Operating Engineers,* 9 Cir., 1969, 413 F.2d 705, 707; *Pearson v. Dennison,* 9 Cir., 1965, 353 F.2d 24, 29 n. 10; *Hayden v. Chalfant Press, Inc.,* 9 Cir., 1960, 281 F.2d 543, 548. Here there was no objection, and receipt of the evidence was stipulated, without limitation. Furthermore the rule excluding hearsay does not apply to determinations of preliminary questions regarding the admissibility of evidence, such as the cocaine in this case. Fed.R.Evid. 104(a), 1101(d)(1); *United States v. Haldeman,* D.C.Cir., 1976, 559 F.2d 31, 107. Thus, there was nothing improper about the evidence that the district court relied upon to reject Fernandez's suppression claim.

The judge's earlier order adopting the magistrate's recommendation to deny Fernandez's pretrial motion to suppress, and to grant Crespo's motion, was interlocutory. *See DiBella v. United States,* 1962, 369 U.S. 121, 131, 82 S.Ct. 654, 660, 7 L.Ed.2d 614; *People of the Territory of Guam v. Mafnas,* 9 Cir., 1983, 721 F.2d 683, 685. Such an interlocutory order can be revised at any time before final judgment. *Fourniquet v. Perkins,* 1854, 57 U.S. 82, 85, 16 How. 82, 85, 14 L.Ed. 854: "The case was at final hearing at the argument upon the exceptions; and all of the previous interlocutory orders in relation to the merits, were open for revision, and under the control of the court." *School Dist. No. 5 v. Lundgren,* 9 Cir., 1958, 259 F.2d 101, 105: "As in the case of any opinion, order, or other pronouncement

which does not amount to a final judgment, the recitals and decretal provisions of the order ... were subject to revision;" 7 Moore's Federal Practice ¶ 60.20 (1983 ed.). Neither the parties nor the law imposed any duty on the judge to adhere to the magistrate's ruling, which he had once approved, that the evidence should be suppressed as to Crespo.

The Supreme Court has twice told us that the use of a drug-sniffing dog to detect contraband in a suitcase, as here, is not a search within the meaning of the Fourth Amendment to the United States Constitution, and need not be based on probable cause. *United States v. Place*, 1983, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110; *United States v. Jacobsen*, 1984, 466 U.S. 109, ——, 104 S.Ct. 1652, 1662, 80 L.Ed.2d 85. Fernandez does not challenge the dog sniff.

Taken along with the other information that the agents had at the time, the dog's "hit" established probable cause to believe that the suitcase contained contraband. *See United States v. Spetz*, 9 Cir., 1983, 721 F.2d 1457, 1464; *United States v. Solis*, 9 Cir., 1976, 536 F.2d 880, 881. As the district judge concluded: "The dogs reaction to his sniffing the bag indicated that there was strong evidence to believe that drugs were inside the bag." Therefore, the agents could have obtained a warrant to search the suitcase and, because the dog's "hit" gave them probable cause to believe that Crespo was carrying contraband, they had probable cause to arrest him while they got the search warrant.

Crespo thus had the choice between consenting to a search of the suitcase or being lawfully detained pending search of the suitcase pursuant to a warrant. As the court found, Crespo could and did voluntarily choose to consent. *See Florida v. Royer*, 1983, 460 U.S. 491, 505–06, 103 S.Ct. 1319, 1328–29, 75 L.Ed.2d 229 (consent to search of luggage given during illegal detention is tainted by that illegality, but if there were probable cause to arrest at the time of consent, the consent would not be tainted); *United States v. Mendenhall*, 1980, 446 U.S. 544, 548, 100 S.Ct. 1870, 1874, 64 L.Ed.2d 497 (consent to search where no threat of detention). *Compare United States v. Ocheltree*, 9 Cir., 1980, 622 F.2d 992, 993, 994 (consent to search luggage under threat of detention without probable cause to believe that the defendant possessed contraband is not voluntary). The magistrate's conclusion that Taketa's statement, that the agents would detain Crespo until they obtained a warrant, unlawfully induced Crespo's consent was clearly wrong because it relied on *Ocheltree*, where there was no probable cause. *Magistrate's Findings & Recommendation* at 14; *see Ocheltree*, 622 F.2d at 994. Here, there was probable cause, and the judge properly corrected his own error in initially adopting the magistrate's recommendation.

Because Crespo's consent was valid, the fruit of the search was admissible against Fernandez. The evidence sustains the court's conclusion that Crespo could give a valid consent. It makes no difference that Fernandez may still have had a possessory or "privacy" interest in the suitcase. At the very least, Crespo had a joint interest with him. A joint possessor can give a valid consent. *See United States v. Matlock*, 1974, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242; *see, e.g., United States v. Rubio*, 9 Cir., 1983, 727 F.2d 786, 796; *Jones v. Berry*, 9 Cir., 1983, 722 F.2d 443, 448–49. Fernandez's only claim is that the search was unlawful. It was not.

Because the trial judge did not rely on the magistrate's finding that Fernandez lacked standing to object to the search, that finding need not be considered. However it was clearly correct.

The judgment should be affirmed.